```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SYLVESTER DZIENNIK, MIECZYSLAW          :
KIERSZTYN, FERDYNAND KOBIEROWSKI,       :
individually and on behalf of all persons :
similarly situated,                      :
                                         :
                 Plaintiffs,             :
                                         :    **MEMORANDUM AND ORDER**
       -against-                         :    05-CV-4659 (DLI) (MDG)
                                         :
SEALIFT, INC., FORTUNE MARITIME,         :
INC., SAGAMORE SHIPPING, INC.,           :
VICTORY MARITIME, INC.,                  :
                                         :
                 Defendants.             :
-----------------------------------------------------------------x
JOSEF FELSKOWSKI,                        :
                                         :
                 Plaintiff,              :
                                         :
       -against-                         :
                                         :
SEALIFT, INC., SAGAMORE                  :    04-CV-1244 (DLI) (MDG)
SHIPPING, INC.,                          :
                                         :
                 Defendants.             :
                                         :
-----------------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

  Wilson Shipping Co., LLC (the "movant"), a non-party in this action,[1] asks the court for an order declaring void and unenforceable its stipulation with the plaintiffs dated April 28, 2008 (the "stipulation"), which released the plaintiffs' claim of lien against the S/S Wilson (the "Wilson"), a vessel formerly owned by the movant. The movant contends that the plaintiffs concealed the material fact that the United States Coast Guard had rejected their notice of claim of lien against the Wilson prior to the execution of the stipulation, entitling the movant to rescind

---

[1] The movant was dismissed from this case on August 30, 2006, based on the court's determination that the plaintiffs lacked standing to bring suit against it.

the agreement. (Movant's Mem. of Law in Supp. of Mot. for Order to Declare Stipulation Void or Alternatively to Deposit Funds with Clerk of the Court (Dkt. # 101) ("motion" or "Mot.") at 3.) The movant further argues that, if Plaintiff believed that their Coast Guard filing was valid, this amounts to a mutual mistake that similarly voids the stipulation. (Mot. at 4.) Should the court deny their motion to declare the stipulation void, the movants asks, in the alternative, that the court direct the Clerk of the Court to accept the Wilson's sale proceeds for deposit into an interest-bearing account until a subsequent order by the court.

The plaintiffs respond that the lien was properly filed and noted by the Coast Guard, making the stipulation valid and enforceable. (Pls.' Mem. in Opp'n to Def.'s Mot. and Pls.' Mem. in Supp. of Requiring Def.'s to Deposit Funds with Clerk of Court (Dkt. # 103) ("Opp'n.") at 6-7.) They further argue that, even if the Coast Guard filing was defective, the existence and validity of the wage lien is not dependent on recordation. Since the stipulation extinguished the plaintiffs' ability to arrest the Wilson and prevent the sale, the movant should not be allowed to renege on the stipulation. (Opp'n at 7-8.)

For the following reasons, the motion to declare the stipulation void is denied. The court grants the movant's alternative request to deposit funds with the Clerk of the Court, and directs the Clerk of the Court to accept the Wilson's sale proceeds for deposit into an interest-bearing account until a subsequent order by the court directs their disposition.

**BACKGROUND**

On August 29, 2007, the plaintiffs filed a notice of a claim of lien for wages and penalties with the United States Coast Guard National Vessel Documentation Center (the "Coast Guard") against the Wilson (the "notice"), pursuant to 46 U.S.C. §§ 11107, 10313, and federal maritime law. (*See* Decl. of Richard J. Dodson, dated June 27, 2008 (Dkt. # 103) ("Dodson Decl."),

Ex. A.) In a letter dated October 4, 2007, the Coast Guard informed the plaintiffs that the notice was invalid because it listed the plaintiffs' counsel's name and address in lieu of claimants'. (Dodson Decl. Ex. C.)

The plaintiffs allege that, on October 10, 2007, they contacted the Coast Guard by phone to discuss the filing deficiencies. (Opp'n at 4.) They claim to have informed the Coast Guard that they could not include claimants' actual names and addresses because this data had been redacted by court order, and was only known by defendants in the ongoing class action lawsuit.[2] (*Id.*) A person that the plaintiffs identify as "Nicole" allegedly accepted their explanation and indicated that the liens would be noted on the vessels' titles despite the plaintiffs' inability to produce claimants' actual names and addresses. (*Id.* at 5.) In addition, "Nicole" allegedly told the plaintiffs that they would be informed if there were any subsequent issues with the filings. (*Id.*) The plaintiffs claim that they were not so informed, which caused them to believe that the notices were properly filed. (*Id.*)

On April 28, 2008, the parties entered into the stipulation to execute a "satisfaction or release of mortgage, claim of lien or preferred mortgage" to "facilitate the sale of the S.S. Wilson without impeding the rights and material positions of the parties." (Decl. of Gregory O'Neill (Dkt. # 102) ("O'Neill Decl.") Ex. 2.) Under the terms of the stipulation, the proceeds from the sale of the Wilson were to be deposited with the clerk of the court for the duration of the plaintiffs' class action lawsuit against several vessels. (*Id*.) Such proceeds would serve as substitute collateral for the claimed lien. (*Id.*)

The movant subsequently filed a "Satisfaction of Lien" with the Coast Guard to remove the notice against the Wilson. (O'Neill Decl. Ex. 3.) On May 2, 2008, however, the Coast

---

[2] It was not until January 14, 2008 that the plaintiffs began to receive the actual names and addresses of the claimants. (Opp'n at 5.)

3

Guard informed the movant that the notice against the Wilson was "never recorded due to deficiencies never . . . taken care of" and, as a result, the "Satisfaction of Lien is returned with no action taken an [sic] the filing has been [t]erminated." (O'Neill Decl. Ex. 4.) The movant sold the Wilson in early June 2008 for approximately $7.1 million, and now seeks an order to void its obligation to deposit the proceeds with the Clerk of the Court during the pendency of the captioned action.

**DISCUSSION**

This dispute turns on whether the stipulation was meant to release only the notice against the Wilson, or also covered the underlying claim of lien that was noticed in the Coast Guard filing. If the stipulation encompassed a release of both the notice and the underlying claim of lien, then the stipulation must be enforced regardless of whether the notice was valid. Considering the parties' intent as adduced from the plain language of the stipulation, the court finds that the stipulation encompassed a release of both the notice and any underlying claims noticed therein. Therefore, the stipulation is enforceable despite the plaintiffs' alleged failure to disclose that the Coast Guard had rejected the notice.

**I.     The Stipulation**

A stipulation "is treated as a contract among the parties, and is subject to the general principles of contract construction and interpretation." *United States v. Assets of Revere Armored, Inc.*, 131 F.3d 132, 132 (2d Cir. 1997). "Under New York law, the terms of a contract must be construed so as to give effect to the intent of the parties as indicated by the language of the contract." *Curry Rd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990) (citing *Slatt v. Slatt*, 477 N.E.2d 1099, 1100 (1985)). "Only when the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent." *Id.* (citation omitted). "The question of

4

whether the language of a contract is clear or ambiguous is a question of law to be decided by the court." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (quotation marks omitted).

Here, the movant claims that the purpose of the stipulation was "to release a Notice of Claim of Lien . . . filed by Plaintiffs' counsel with the [Coast Guard] against the Wilson and to permit the Vessel to present 'clean' Coast Guard documentation to the purchaser of the Vessel, i.e., documentation showing no recorded Claims of Liens against the Vessel." (Mot. at 2.) Further, they argue that the plaintiffs' failure to disclose that the notice had been rejected by the Coast Guard amounts to a material misrepresentation that voids the stipulation. This argument is at odds with the unambiguous language of the stipulation.

The stipulation is unequivocal—it shows that the stipulation's purpose was not simply "to release a Notice of Claim of Lien," as the movant alleges, but rather, to release the underlying claim of lien that was noticed in the Coast Guard filing. The stipulation itself is premised on the fact that the plaintiffs "claim a lien on the . . . [Wilson] for wages and penalty wages" (*id.*), which, as discussed below, exists even if the notice was rejected by the Coast Guard. Moreover, paragraph one clearly states that "the material purpose of this stipulation *is to facilitate the sale of the S.S. WILSON* without impeding the rights and material positions of the parties." (O'Neill Decl. Ex. 2 (emphasis added).) Together, these provisions show that the intent of the parties was not simply to secure "clean" documentation, as the movant claims; rather, they intended to contract to release any underlying claims of lien that could hinder the movant's ability to sell the S.S. Wilson. (Mot. at 2.) The movant itself notes that "in executing the Stipulation, the

5

plaintiffs' counsel represented that it had a valid Claim of Lien and that it would execute a release of said claim in order to facilitate sale of the [Wilson]." (Mot. at 2.) The court will interpret the parties' claims accordingly.

## II. The Notice of Claim of Lien

The validity of the plaintiffs' underlying claim of a lien was not contingent on proper filing of a notice of claim of lien with the Coast Guard. The stipulation states that the plaintiffs claimed a lien on the Wilson for unpaid seaman's "wages and penalty wages." (O'Neill Decl. Ex. 2.) Such liens are governed by the Federal Maritime Lien Act (the "FMLA"), under which "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner" has "a maritime lien on the vessel," and "may bring a civil action in rem to enforce a lien." 46 U.S.C. § 31342(a)(1)(2); *see also In re Millennium Seacarriers, Inc.*, No. 02-CV-7108 (RPP), 2003 WL 21556956, at *6 (S.D.N.Y. July 10, 2003).

Maritime liens for seaman's wages and penalty wages are "preferred maritime liens" under the FMLA, and thus receive priority treatment in the event of a foreclosure and sale of a vessel accompanied by insufficient proceeds to satisfy all creditors. 46 U.S.C. § 31301(D)(5) (identifying liens for the "wages of the crew of the vessel" as "preferred maritime liens"); 46 U.S.C. § 31326 (providing that upon a court sale to enforce preferred maritime liens, such liens have priority over all claims against the vessel, except for court-approved expenses and fees and costs imposed by the court). These liens have been described by courts as "sacred," and have been afforded "utmost protection by admiralty courts." *Governor & Co. of the Bank of Scottland*, 211 F.3d 261 (5th Cir. 2000); *see also The John G. Stevens*, 170 U.S. 113, 158 1898) ("The statutes throw around seamen's wages most definite, detailed and stringent protections . . . ."); *Brandon v. S.S. Denton*, 302 F.2d 404, 416 (5th Cir. 1962) ("Wages of

6

seamen occupy a unique status. The statutory provision extending them the protection of a preferred maritime lien is deeply rooted in history."); *The Samuel Little*, 221 F. 308, 310 (2d Cir. 1915) ("The doctrine of priority of seaman's wages is established beyond question.").

Since maritime liens are created by operation of law when the debt arises, they need not be recorded to be enforceable. These liens serve "the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away." *Itel Containers Int'l Corp. v. Tyson Lykes*, No. 91-CV-1657 (SS), 1993 WL 267290, at *4, (S.D.N.Y. July 12, 1993) (internal quotation marks omitted). They "arise[] when the debt arises, and grant[] the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Id*. Accordingly, "[n]otices of liens (including preferred maritime liens for wages of the crew) against any vessel . . . *may* be filed with the collector of customs at the proper port. However, the filing is permissive, not mandatory: the status and rank of the lien are not defeated by failure to file." *In re Good Ship Appledore, Ltd.*, 122 B.R. 821 (citing *Chase Manhattan Fin. Serv., Inc. v. McMillian*, 896 F.2d 452, 456 (10th Cir. 1990); *United States v. ZP Chandon*, 889 F.2d 233 (9th Cir. 1989)) (emphasis added).

Simply put, "a maritime lien for seaman's wages is *not* subject to any filing or recording requirement." *Governor & Co. of the Bank of Scot*, 211 F.3d at 269 (citing *ZP Chandon*, 889 F.2d at 238). Penalties are similarly exempt from any filing or recording requirement. *See id.* at 269 & n.5 (summarizing case law supporting the proposition that a penalty wages lien has the same priority as a wages lien); *The Great Canton*, 299 F. 953 (E.D.N.Y. 1924) (ruling that a penalty wages lien has the same priority as one for earned wages).

In light of the foregoing, the court finds that the plaintiffs were not required to file a valid notice of claim to enforce or maintain their preferred maritime lien for unpaid wages and penalty

7

wages. Such notice is not a lien itself nor is it required to enforce a valid maritime wage lien. Indeed, the Coast Guard's application for a notice of claim of lien prominently states that filing a notice has no effect on the validity of the underlying lien: "Neither the filing of a notice of claim of lien nor the acceptance by the Coast Guard of such a notice is a guarantee that the claim is valid or enforceable." Nat'l Vessel Documentation Ctr., U.S. Coast Guard, *Notice of Claim of Lien - Filing and Recording*, *available at* http://www.uscg.mil/hq/cg5/nvdc/ instr/instrcl.doc (last visited April 27, 2009). Therefore, the plaintiffs' wage lien existed independent of the notice.

## III. Validity of the Stipulated Terms

The court finds that the movant's characterization of the stipulation's purpose is inconsistent with the explicit purpose of the stipulation: to facilitate the sale of the Wilson. Because the notice is not a lien, but only notice of a claim to a lien, the court cannot interpret the release of the "wages and penalty wages" liens specified in the stipulation as contingent on proper filing of a valid notice with the Coast Guard.

Had the movant sold the Wilson without the stipulation, the purchasers would have "acquire[d] imperfect title," notwithstanding plaintiff's failure to file a notice of claim with the Coast Guard, "and maritime liens are regularly enforced against bona fide purchasers without notice." *John W. Stone Oil Distrib., Inc. v. M/V Miss Bern*, 663 F. Supp. 773, 778 (S.D. Ala. 1987) ("The Federal Maritime Lien Act . . . does not require the recording of liens. Maritime liens are 'secret' and clearly may operate to the prejudice of purchasers without notice.") (citing *Piedmont and Georges Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 12 (1920)). Instead, the movant secured a release that both guaranteed "'clean' Coast Guard documentation" (Mot. at 2), and, more importantly, actually extinguished the plaintiffs' underlying Claim of Lien against the Wilson. The movant could thus sell an unencumbered vessel, without assuming any

indemnification or hold harmless obligations arising out of the plaintiffs' claims. (Opp'n at 7-8.) The court agrees with the plaintiffs that any failure to record the lease is "absolutely no basis for defendants to be able to renege upon the Stipulation at this point in time." (Opp'n at 8.)

Moreover, if, as the movant argues, the stipulation is valid only as to the notice, the plaintiffs could have asserted a wage lien independent of that notice, allowing them to prevent the sale of the Wilson notwithstanding the stipulated terms. The material purpose of the stipulation, however, was to "facilitate the sale of the S.S. Wilson." If the plaintiffs had nevertheless attempted to prevent the sale, the court would have interpreted the stipulation as it does now and enforced the permissive terms of the stipulation. By the same token, where the plaintiffs contracted to relinquish their ability to enforce any maritime lien against the Wilson in exchange for deposit of the sale proceeds as collateral, the court will not now find—after the Wilson has already been sold—that the stipulation is unenforceable.

This discussion is dispositive of the instant motion, obviating the need for this court to address the issue of whether the plaintiffs' claim of lien was properly recorded with the Coast Guard. This opinion has no bearing on the merits of the plaintiffs' substantive claims.

## CONCLUSION

For the reasons set forth above, the movant's Motion to Declare Stipulation Void is denied. The Clerk of the Court is directed to accept the proceeds from the sale of the Wilson for deposit into an interest bearing account, where they will remain during the pendency of this action or until the court orders otherwise.

SO ORDERED
DATED:    Brooklyn, New York
              September 29, 2009

                                                          _____/s/_____
                                                            DORA L. IRIZARRY
                                                     United States District Judge