UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SYLVESTER DZIENNIK**,** MIECZYSLAW : 
KIERSZTYN, FERDYNAND KOBIEROWSKI, :
individually and on behalf of all persons :
similarly situated, :
 :
                          Plaintiffs, :
 :                       **ORDER ADOPTING IN PART**
           -against- :                  **AND MODIFYING IN PART**
 :                       **REPORT AND**
SEALIFT, INC., FORTUNE MARITIME, :          **RECOMMENDATIONS**
INC., SAGAMORE SHIPPING, INC., :          05-CV-4659 (DLI)(MDG)
VICTORY MARITIME, INC., :
 :
                          Defendants. :
-----------------------------------------------------------------x
MIECZYSLAW KIERSTIN, :
 :                       **ORDER ADOPTING IN PART**
                          Plaintiff, :                  **AND MODIFYING IN PART**
 :                       **REPORT AND**
           -against- :                  **RECOMMENDATIONS**
 :                       06-CV-5305 (DLI)(MDG)
M/V ADVANTAGE :
 :
                          Defendants. :
 :
-----------------------------------------------------------------x
JOSEF FELSKOWSKI, :
 :                       **ORDER ADOPTING IN PART**
                          Plaintiff, :                  **AND MODIFYING IN PART**
 :                       **REPORT AND**
           -against- :                  **RECOMMENDATIONS**
 :                       04-CV-1244 (DLI)(MDG)
SEALIFT, INC., SAGAMORE :
SHIPPING, INC., :
 :
                          Defendants. :
 :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

        On March 16, 2009, the Honorable Marilyn D. Go, United States Magistrate Judge,

issued a Report and Recommendation on defendants' motion for summary judgment and to

compel arbitration, and plaintiffs' motion for partial summary judgment (the "R & R"). Judge Go recommended that plaintiffs' motion for partial summary judgment be granted as to their claims under 46 U.S.C.§ 11107 and denied in all other respects. She further recommended that defendants' motions for summary judgment and to compel arbitration or to dismiss be denied. On April 13, 2009, defendants filed objections to the R & R, and, on April 23, 2009, plaintiffs filed a memorandum in support of the R & R and in opposition to defendants' objections.

By a joint letter dated January 21, 2010, the parties advised the court that they had agreed to mediate these cases privately with JAMS ADR before the Honorable John C. Lifton (Retired, U.S. District Court, District of New Jersey). The parties requested that the court withhold any rulings on the motions pending the outcome of the mediation. (*See* Docket Entry #117 under *Dziennik v. Sealift, Inc., et al*, 05-CV-4659 (DLI)(MDG)). By letter dated February 26, 2010, Judge Lifland advised the court that the mediation was unsuccessful. As such the court automatically reinstated the motions and the R & R.

After carefully reviewing the R & R, the recommendations concerning defendants' motion for summary judgment and to compel arbitration are adopted in part and rejected in part. Defendants' motion to compel arbitration as to the eight plaintiffs for whom defendants produced executed copies of the Philippines Overseas Employment Administration Standard Terms and Conditions is granted and denied as to the remaining plaintiffs. The court further grants defendants' motion for summary judgment as to the applicability of the double wage penalty statute, 46 U.S.C. § 10313, finding that plaintiffs are not entitled to double wage penalties for amounts recovered under 46 U.S.C. § 11107. The R & R is adopted in all other respects.

## BACKGROUND

This memorandum assumes the parties' familiarity with these cases' factual background, procedural history, and R & R. In *Dziennik v. Sealift, Inc., et al*, 05-CV-4659 (DLI)(MDG),

plaintiffs brought a class action against defendants Sealift, Inc. ("Sealift"), Fortune Maritime Inc. ("Fortune"), Sagamore Shipping Inc. ("Sagamore"), and Victory Maritime, Inc. ("Victory") (together, the "Sealift defendants"), alleging violations of federal maritime law, specifically under Sections 10313 and 11107 of the Seaman's Wage Act, 46 U.S.C.A. § 10301, *et seq.*[1] The class is composed of 209 seafaring employees, 113 of whom are Polish citizens and 96 of whom are Filipino citizens, employed on U.S. flag vessels owned, managed, or operated by one or more of the defendants at various times since January 1, 1999. Class plaintiffs seek recovery of unpaid wages, overtime wages, and statutory penalties.

In *Felskowski v. Sealift, Inc., et al*, 04-CV-1244 (DLI)(MDG), plaintiff Josef Felskowski brought an individual action against defendants Sealift and Sagamore seeking the same relief as the class action plaintiffs. Plaintiff Felkowski's motion for summary judgment was filed on June 21, 2005, briefed by the parties, and argued on April 24, 2007. After class certification was granted on May 29, 2007, this court consolidated Felkowski's individual action with the class action on the parties' consent. Since defendants Victory and Fortune were not parties to the *Felkowski* action, they had not had the opportunity to respond to the arguments set forth in Felkowski's motion for summary judgment. The motion was thus briefed and argued for a second time. All defendants also cross-moved for summary judgment on December 3, 2007.

*Kierstin v. M/V Advantage*, 06-CV-4659 (DLI)(MDG) is an *in rem* action brought by the parties to obtain security in the *Dziennik* action. As *Kierstin* and *Dziennik* involve common questions of law and fact, the two cases were consolidated on October 31, 2006 on the parties' consent.

---

[1] For a more detailed description of the class action, please see *Dziennik v. Sealift*, 05-cv-4659 (DLI)(MDG), 2007 WL 1580080 (E.D.N.Y. May 29, 2007).

# DISCUSSION

In reviewing a magistrate judge's R & R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a party objects to an R & R, the court must engage in *de novo* review of those portions of the report to which the party specifically objects. *See United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

Defendants object to the magistrate judge's recommendation that their motion to compel arbitration be denied, arguing that the magistrate judge erred in rejecting their claim that the employment agreements of the Filipino plaintiffs must be arbitrated in the Philippines under Philippine law. They also argue that the magistrate judge erred in finding that issues of fact precluded summary judgment on whether penalty wages should be awarded pursuant to 46 U.S.C. § 10313, the double wage penalty statute. They further object on grounds that the magistrate judge included incorrect statements of fact and law in her analysis concerning laches. Finally, defendants rely on their summary judgment papers and their 56.1 submissions previously submitted in the *Felskowski* and *Dziennik* actions with respect to "each and every finding that is adverse to them in the R & R," including the magistrate judge's rulings that:

1. Signed shipping articles were required by each plaintiff and defendants and that substantial compliance with the articles provision of 46 U.S.C. § was insufficient;

2. The individual contracts between each plaintiff and defendants failed to contain the necessary terms of or substantially comply with 46 U.S.C. § 10302;

3. 46 U.S.C. § 8103(b) and § 8701 apply to unlicensed seaman who are not part of the crew complement under 46 U.S.C. § 8101;

4. 46 U.S.C. § 8103(b) applies to plaintiffs as riding gang members;

5. 46 U.S.C. § 8701 apply to plaintiffs as riding gang members;

6. Plaintiffs, as riding gang members, were not required to sign articles under 46 U.S.C. § 10302;

7. The official position of MARAD, the regulatory agency for U.S. commercial fleets with respect to 46 U.S.C. §§ 10302, 8103(b) and 8701 does not apply to riding gang members such as plaintiffs;

8. The Coast Guard's practice of permitting the use of foreign riding gangs on U.S. flag vessels is not "administrative common law;"

9. A violation of either § 8103(b) or § 8701 gives rise to recover under § 11107 by plaintiffs of the highest rate of wages at the port from which the seaman was engaged;

10. No genuine issue of material fact exists as to whether plaintiffs' contracts provided terms encompassed by the shipping articles as required by 46 U.S.C. § 10302; and

11. No genuine issue of material fact exists as to whether the provisions of § 8701, § 8103(b) and § 10302 apply to plaintiffs.

(Def's Objections ("Obj.")s at 33-34.)

Plaintiffs respond that the magistrate judge correctly concluded that arbitration was not required and in finding that the double wage penalty statute was applicable to this case. They also argue that the court should adopt the reasoning and opinion of the magistrate judge on the issue of laches and that defendants' additional objections are without merit.

## I.      Legal Standards

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). The nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), but must affirmatively "set out specific facts showing a genuine issue for trial," Fed. R. Civ. P. 56(e).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 127 S. Ct. at 1776. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988)).

## II.     Defendants' Motion to Compel Arbitration

### A.     Plaintiffs For Whom Defendants Have Not Produced Employment Contracts with the Standard Terms

The magistrate judge concluded that defendants cannot compel arbitration as to any class members who are not bound the by employment agreement that incorporates the arbitration clause in Section 29 of the Philippines Overseas Employment Administration ("POEA") Standard Terms and Conditions (the "Standard Terms"). *See Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 67 (2d Cir. 2005) ("We may not compel a party to arbitrate a dispute where there is a genuine issue as to whether the non-moving party actually agreed to arbitrate."); *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("[T]o uphold the validity of terms incorporated by reference it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms[.]") (internal quotation marks and citation omitted). The magistrate judge found that defendants did not provide sufficient proof that plaintiffs had notice of the arbitration clause, and that, as such clause was not specifically incorporated into plaintiffs' employment agreement, plaintiffs could not be found to have knowingly consented to arbitration. Defendants argue that the magistrate judge erred by concluding that, as a matter of law, only the eight plaintiffs for whom defendants produced executed Standard Terms agreed to arbitration.

The court finds that arbitration cannot be compelled as to any plaintiffs for whom defendants have not produced executed Standard Terms because defendants have not established the existence of an agreement to arbitrate by a preponderance of the evidence. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (internal quotation marks and citation omitted); *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (finding that, although federal law strongly favors arbitration, "the law still requires that the parties actually agree to arbitration before it will order them to arbitrate a dispute"). This court agrees with the magistrate judge's finding that only one version of the employment contracts produced by defendants for the Filipino plaintiffs arguably incorporates the POEA's Standard Terms and Conditions, which sets forth the arbitration provision that defendants seek to enforce. (R & R at 35-40.) Moreover, the executed Standard Terms are attached to only eight of the ninety-four employment contracts produced by defendants. Under these circumstances, the court cannot order other plaintiffs for whom defendants failed to provide executed copies of the Standard Terms to submit to arbitration in the absence of evidence that they agreed to be bound by such terms.

Defendants further contend that the magistrate judge erred by denying their motion to compel arbitration without a trial as to which contracts were executed and whether they incorporated the Standard Terms. (Defs.' Objections at 19.) In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 201-08, the Second Circuit Court of Appeals applies "a standard similar to that applicable to a motion for summary judgment." *Dubois v. Macy's East Inc.*, No. 07-5441-cv, 2009 WL 2030195, at *1 (2d Cir. July 9, 2009) (citing *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003)); *see also Brown v. St.*

*Paul Travelers Co., Inc.*, 331 Fed. Appx. 68, 68 (2d Cir. 2009). "A motion to compel arbitration must be dismissed and a trial held '[i]f there is an issue of fact as to the making of the agreement for arbitration.'" *Brown*, 331 Fed. Appx. at 68 (quoting *Bensadoun,* 316 F.3d at 175)*; see also Telenor Mobile Comm'ns AS v. Storm, LLC*, 584 F.3d 396, 407 (2d Cir. 2009); *Sphere Drake Ins., Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 33 & n.4 (2d Cir. 2001).

Here, defendants seek a trial based on: (1) copies of the one-page POEA contracts that incorporate the Standard Terms, produced for about two-thirds of plaintiffs, (2) evidence that the standard practice of the employment agency Magsaysay Maritime Corporation ("MMC") was to have Filipino seamen execute the Standard Terms, and (3) copies of the signed Standard Terms for some of the plaintiffs. (Defs.' Objections at 19.) The court agrees that this evidence creates a material issue of fact as to whether the parties agreed to arbitrate. However, it need not hold a trial before deciding defendants' motion to compel arbitration, in the same way that it need not hold a trial before deciding a motion for summary judgment. *See Bensadoun*, 316 F.3d at 175 (finding that "the summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability"). Indeed, under *Brown*, the "motion to compel arbitration *must be dismissed*" before a trial may be held "as to the making of the agreement for arbitration." 331 Fed. Appx. at 68 (quoting *Bensadoun,* 316 F.3d at 175) (emphasis added). This does not preclude defendants from raising this issue at trial along with other evidence relevant to claims regarding their liability. Accordingly, the magistrate judge properly recommended that defendants' motion to compel arbitration be denied.

### B.     Plaintiffs Who Executed the POEA Standard Terms and Conditions

Regarding the eight plaintiffs for whom defendants produced executed copies of the Standard Terms, the court is persuaded by defendants' objections to the magistrate judge's

refusal to enforce the arbitration clause in Section 29 of the Standard Terms.[2] Relying primarily on the United States Supreme Court's ruling in *Arguelles* and the text of 46 U.S.C. §§ 10313 and 10317, the magistrate judge found that enforcement of the arbitration clause would contravene public policy favoring judicial resolution of statutory wage claims. (R & R. at 41 (citing *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351 (1971).) In *Arguelles*, the Court refused to enforce a compulsory arbitration clause in a collective bargaining agreement made pursuant to the Labor Management Relations Act ("LMRA"). 400 U.S. at 356. It found that the LMRA was in "literal conflict" with the seamen's express statutory right to bring suit in federal court for unpaid wages, and ran contrary to the special status of seamen as wards of admiralty. *Id*. at 355-56. The magistrate judge reasoned that *Arguelles* mandated preservation of the seamen's statutory rights to bring wage claims in federal court notwithstanding the arbitration agreement, especially because, in contrast to Arguelles, plaintiffs here have no protection based on union representation, and their claims are based entirely on federal statutes.[3] (R & R at 42.)

---

[2] In its order granting class certification, this court questioned the relevance of the POEA in light of the absence of evidence that any of the seamen involved here had executed an agreement within the POEA's purview. *See Dziennik*, 2007 WL 1580080, at *5. The court concurs with the magistrate judge that defendants have since adequately demonstrated that the POEA governs the employment agreement of eight plaintiffs by producing a copy of the Standard Terms bearing these plaintiffs' signature. *See Razo v. Nordic Empress Shipping Ltd.*, No. 08-3442, 2009 WL 3449016, at *1 (3d Cir. Oct. 28, 2009) (affirming a district court's ruling that there was an arbitration agreement between the parties where plaintiff's employment contract incorporated the full text of the POEA Standard Terms and Conditions); *Bautista v. Star Cruises*, 396 F.3d 1289, 1300 (11th Cir. 2005) (finding a valid arbitration agreement where defendants supplied the district court with copies of the employment agreement and the Standard Terms signed by each crew member).

[3] Courts have found that "the effect of POEA intervention in employment contracts is to shift the balance of power slightly in favor of the employee in much the same way that a labor union . . . increases the level of protection for employees[.]" *Marinechance v. Sebastian*, 143 F.3d 216, 221 n.25 (5th Cir. 1998); *see also Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 221 (3d Cir. 1991) (finding that the POEA was established to "promote and develop overseas employment opportunities and to afford protection to Philippine workers and their families," and "has

The court concurs with defendants that *Arguelles* cannot be read to completely bar enforcement of an arbitration clause in statutory wage suits brought by seamen. (Defs.' Objections at 6.) As the Eleventh Circuit Court of Appeals noted in *Lobo*, the *Arguelles* court did not have the opportunity to consider the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201-08, *et seq.*, which was issued only days prior to the issuance of *Arguelles* decision. *Lobo v. Celebrity Cruises, Inc.*, 488 F.3d 891, 895 (11th Cir. 2007).[4] The Convention expressly provides that "[e]ach Contracting State *shall recognize* an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen . . . between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." *Id.* at 894 (quoting Convention, Article II(1)) (emphasis added). Accordingly, "the Convention *compels* federal courts to direct qualifying disputes to arbitration[.]" *Lobo*, 488 F.3d at 895. The parties do not dispute that the employment contracts of the plaintiffs who executed the Standard Terms are subject to the Convention. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001) (setting forth the test for whether an agreement falls under the Convention and the FAA).

Congressional intent to afford seamen a judicial remedy for statutory wage claims, as evidenced in Sections 10313 and 10317, does not preclude a contractual waiver of their rights to

---

promulgated extensive rules and regulations controlling overseas employment to accomplish these objectives"). Furthermore, as plaintiffs have not alleged fraud in the inducement or any other overreaching by defendants in the formation of their employment contracts, plaintiffs' lack of union representation is of no relevance to the instant analysis.

[4] The magistrate judge also relies on a number of Second Circuit decisions supporting her view that Sections 10313 and 10317 preclude a contractual waiver of plaintiffs' rights to seek a judicial remedy for statutory wage claims. *See Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d 568 (2d Cir. 1960); *Glandizis v. Callinicos*, 140 F.2d 111 (2d Cir. 1944). However, such cases predate the Convention, and thus are inapposite in the instant case.

seek that remedy. (R & R at 46.) *See Suissa v. American Export Lines, Inc.*, 507 F.2d 1343, 1347 (2d Cir. 1974) (acknowledging that the wage statutes and *Arguelles* give "a seaman the option of choosing *either route* [judicial resolution or contract grievance procedures] to enforce his claim") (emphasis added). Nor does the fact that the Second Circuit and other courts have "entertained cases brought by seamen claiming violation of wage statutes" render a valid arbitration clause unenforceable as against public policy. (R & R. at 46.) Indeed, Supreme Court precedent "establish[es] a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions . . . reinforced by the emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). This presumption, embodied in Congressional implementation of the Convention by the FAA, applies with "special force in the field of international commerce." *Id.*

Other federal circuit courts have required arbitration of seamen wage claims, finding that *Arguelles*'s reasoning supports the enforcement of qualifying arbitration clauses under the Convention's plain text. *See, e.g.*, *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1156 (9th Cir. 2008) ("[T]he Convention Act overcomes any presumption deriving from Section 10313(i) that the courts shall remain open to foreign seafarers in a case in which a seafarer has signed an otherwise enforceable agreement to arbitrate a wage claim."); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 907-08 (5th Cir 2005) (requiring arbitration of claims brought by seamen under the Fair Labor Standards Act).[5] The Convention's express mandate

---

[5] Plaintiffs unsuccessfully seek to distinguish *Lobo*, *Rogers*, and *Lim* on grounds that these cases did not involve U.S.-flagged vessels, and, as such, those defendants were not subject to the prohibitions of the Seaman's Wage Act in Title 46. (*See* Pls.' Resp. to Defs.' Obj. at 4.) Plaintiffs misrepresent the applicable law. *Lobo* and *Rogers* both involved statutory wage claims brought pursuant to Title 46. *See Lobo*, 488 F.3d at 893; *Rogers* 547 F.3d at 1160. Like seamen sailing aboard U.S.-flagged vessels, "a foreign seaman, sailing on board a foreign-flag vessel, may file a double wage claim [under 46 U.S.C. § 10313] in a United States court if he was

favoring arbitration could be contrasted with the LMRA, whose history was deemed "silent on the abrogation of existing statutory remedies of seamen in the maritime field," and thus could not "override[] the explicit judicial remedy provided by 46 U.S.C. § 10313." *Rogers,* 547 F.3d at 1156 (quoting *Arguelles,* 500 U.S. at 357-58). Likewise, this court concludes that enforcement of a qualifying arbitration clause under the Convention is consistent with the Court's reasoning in *Arguelles.*[6]

As noted by the magistrate judge, at least one district court in this Circuit has interpreted *Arguelles* to mean that a seaman may sue for wages "without first exhausting any contractual dispute resolution procedures," such as arbitration. *Korinis v. Sealand Servs., Inc.*, 490 F. Supp. 418, 420 (S.D.N.Y. 1980); *cf. Kowalik v. Gen. Marine Transp. Corp.,* 550 F.2d 770, 771-72 (2d Cir. 1977) (holding that *Arguelles* did not allow a seaman to avoid the requirement of exhaustion of contractual remedies where his claim for overtime wages was not grounded in 46 U.S.C. § 596, Section 10313's predecessor); *Harding v. City of New York*, 724 F. Supp. 1129, 1131 (S.D.N.Y. 1989) (holding that American seamen were required to pursue their remedies under collective bargaining agreement before invoking jurisdiction of court where their suit for wages was not brought under the statutory scheme scrutinized in *Arguelles*). This is because the Supreme Court concluded in *Arguelles* that individual seamen could choose between pursuing

---

discharged from the vessel in a United States port." *In re Millenium Sea Carriers Inc.*, 237 Fed. Appx. 631, 633 (2d Cir. 2007) (*quoting Cubeiro v. Sun Seaway Enters., Inc., et al.,* 539 F. Supp. 1175, 1177 (S.D.N.Y.1982)); *see also Rogers*, 547 F.3d at 1160.

[6] The magistrate judge cites *Carnival Cruise v. Schute*, 499 U.S. 585 (1991) in support of her view that an arbitration clause may operate as an unenforceable waiver of a party's right to pursue statutory remedies where it denies the plaintiff a right to "judicial resolution of the claims against petitioner." *Id.* at 596. However, that case was decided under 46 U.S.C. § 183c, which was "enacted in response to passenger-ticket conditions purporting to limit the shipowner's liability" by means of an arbitration clause. *Id.* In contrast to § 183c, the Convention's enactment reflects "the emphatic federal policy in favor of arbitral dispute resolution" in international commerce. *Mitsubishi Motors Corp.*, 473 U.S. at 631.

arbitral or judicial remedies, since Congress had not clearly made arbitration mandatory. *Arguelles,* 400 U.S. at 357-58. However, after reviewing *Arguelles* and the provisions under Section 10313, this court agrees with the federal circuit courts that have considered the issue that the Convention "specifically and expressly compels federal courts to enforce arbitration agreements." *Balen v. Holland America Line, Inc.*, 583 F.3d 647, 653 (9th Cir. 2009) (quoting *Rogers*, 547 F.3d at 1157).[7] Significantly, neither *Korinis* nor *Kowalik* contain any mention of the Convention or its effect on the enforceability of qualifying arbitration clauses in cases involving statutory wage claims brought by seamen. Moreover, notwithstanding its interpretation of *Arguelles,* the court in *Korinis* barred plaintiff from bringing a claim for overtime wages because such claim was not within the scope of 46 U.S.C. § 596 (the predecessor to Section 10313), and plaintiff "did not exhaust the exclusive grievance and arbitration procedure established by the collective bargaining agreement." *Korinis*, 490 F. Supp. at 420; *see also Kowalik*, 550 F.2d at 771-72; *Harding*, 724 F. Supp. at 1131. Therefore, *Arguelles* does not preclude enforcement of the arbitration agreement under the Convention.

A critical factor in the magistrate judge's recommendation that the motion to compel arbitration be denied as contrary to public policy was plaintiffs' inability to assert their statutory wage claims in an arbitration process conducted under Philippine law. (*See* R & R at 43, 46-48.) The magistrate judge found that enforcement of the arbitration clause is inappropriate where it not only deprives seamen of a judicial remedy, but also denies them their rights to assert their wage claims under the statute. *See Mitsubishi Motor Corp.*, 473 U.S. at 637 n.19 (recognizing that "in the event that choice-of-forum and choice-of-law contract clauses operated as a

---

[7] The other two cases cited by the magistrate judge for the proposition that arbitration clauses are unenforceable under *Arguelles* are from the Ninth Circuit, which, as already noted, has expressly ruled otherwise. *See Larkins v. Hudson Waterways Corp.*, 640 F.2d 997, 999-1000 (9th Cir. 1981); *Mateo v. M/S Kiso*, 805 F. Supp. 761, 777-78 (N.D. Cal. 1991).

prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *Central Nat'l-Gottesman, Inc. v. M.V. "Gertrude Oldendorff,"* 204 F. Supp. 2d 675, 679 (S.D.N.Y. 2002) (holding that forum selection clause in a bill of lading was unenforceable as it deprived plaintiffs of their statutory rights under the Carriage of Goods by Sea Act). However, as defendants note in their objections, the magistrate judge erred in concluding that the arbitral body identified in the Standard Term—the National Labor Relations Commission ("NLRC"), or, in the alternative, a panel of voluntary arbitrators —lacks jurisdiction over statutory wage claims. (*See* Defs.' Objections at 11-13.)

The court cannot adopt the magistrate judge's finding as to the potential arbitrators' lack of jurisdiction over plaintiffs' statutory wage claims, premised as it was solely on the affidavit of Mr. Joseph Capuyan, a Filipino lawyer. (Richard J. Dodson Decl., Doc. 83, Ex. D, at ¶ 4.) Although courts can "enlist the parties in" the effort to interpret foreign law, "[u]ltimately the responsibility for correctly identifying and applying foreign law rests with the court." *Rationis Enterprises Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580, 586 (2d Cir. 2005); *see also Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009) ("The district court's determination of foreign law must be treated as a ruling on a question of law.") (quoting Fed. R. Civ. P. 44.1). Moreover, where there is ambiguity in the contract as to whether plaintiffs can vindicate their statutory claims in the arbitral forum, "the proper course is to compel arbitration." *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003) (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995)). "[M]ere speculation that the foreign arbitrators might apply [foreign] law which, depending on the proper construction of [the federal statute in issue], might reduce respondents' legal obligations," does not provide an

adequate basis upon which to declare the relevant arbitration agreement unenforceable. *Vimar Seguros y Reaseguros*, 515 U.S. at 541.

Here, the R & R credited Mr. Capuyan's assertions on jurisdiction because it incorrectly concluded that his representations as to Filipino law on that issue were uncontested by defendants. (R & R. at 47-8 & n.13.) In fact, there is some dispute as to whether the voluntary arbitrators or the NLRC has jurisdiction over statutory wage claims as a matter of law. (*See* Del Rosario Supp. Decl., Doc. 93, at ¶¶ 10-15.) Most persuasive is defendants' citation to the Migrant Workers and Overseas Filipinos Act of 1995 (the "Migrant Workers Act"), which provides:

> **Money Claims** – Notwithstanding any provision of law to the contrary, the Labor Arbiters of the National Labor Relations Commission (NLRC) *shall* have the original and exclusive jurisdiction to hear and decide, within 90 calendar days after the filing of the complaint, the claims arising out an employer-employee relationship or *by virtue of any law or contract involving Filipino workers for overseas deployment including any claims for actual, moral, exemplary and other forms of damages.*

(Del Rosario Supp. Decl., Doc. 93, at ¶ 12 (quoting Migrant Workers and Overseas Filipino Act of 1995, Republic Act 8042, § 10 (1994) (Phil.).)

Defendants argue that the "use of the word 'shall' connotes the mandatory character of the provision that the NLRC is the original and exclusive adjudicating body over all employer-employee claims of seafarers." (*Id*. at ¶ 13.) They further argue that this provision "explicitly grants to the NLRC jurisdiction over all claims of seamen based on law." (*Id.* at ¶ 14.) This argument is bolstered by the Fifth Circuit's reasoning in *Lim*, in which the court rejected an argument that an arbitration clause was unenforceable because the NLRC lacked jurisdiction over wage claims brought under the Fair Labor Standard Act ("FLSA"). 404 F.3d at 907. Citing the same section referenced above by defendants, the court found that the plain text of the

Migrant Workers Act empowered the NLRC to consider wage claims by Filipino workers arising under any law, giving the court "no reason to conclude that the NLRC could not consider an action for [statutory wages] arising under the FLSA[.]" *Id.* at 908 (citing Migrant Workers Act § 10). The same is true for the Seaman's Wage Act. Although this court is not ready to conclude that the NLRC or the voluntary arbitrators would definitely have jurisdiction over plaintiffs' statutory wage claims, neither can it conclude that plaintiffs would be deprived of their statutory wage claims in an arbitration process conducted under Philippine law.[8] In short, since the court does not know how the arbitrator will construe the relevant jurisdictional provisions of Filipino law and agreements in issue, the proper course here is to compel arbitration. *Pacificare*, 538 U.S. at 407.[9]

### III. Defendants' Motion for Summary Judgment Regarding Recovery of Double Wage Penalties Under 46 U.S.C. § 10313

The court finds that plaintiffs are not entitled to recover double wage penalties under 46 U.S.C. § 10313, because as a matter of law, the amount claimed due—"the highest rate of wages from the port" under 46 U.S.C. § 11107—is not a "wage" under Section 10313. Section 10313 provides, in relevant part:

---

[8] Even if plaintiffs were limited in their ability to bring statutory claims in the arbitral forum, such limitations would not automatically make enforcement of the arbitration and choice of law clauses contrary to the public policies established by the wage statutes. *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1366 (2d Cir. 1993) (enforcing English arbitration and choice of law clauses in an action brought by U.S. investors, because plaintiffs had "remedies under English law adequate not only to vindicate their substantive rights but also to protect the public policies established by the United States securities laws").

[9] The court also concurs with defendants that, to the extent that there is a conflict between the Seaman's Wage Act and the Convention with respect to the enforceability of an arbitration clause, the Convention would govern because, unlike the Seaman's Wage Act, the Convention specifically addresses the validity of arbitration clauses. *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of the enactment.").

(f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.

(g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

46 U.S.C. § 10313(f), (g). Under the plain text of this statute, the double wage penalty is triggered when a vessel's master or shipowner fails to pay a seaman the balance of wages due within the time period set forth therein.

As noted by defendants in their objections, courts have found that Section 10313 applies only to compensation paid by an employer for services rendered. *Merrick v. Sealand Serv., Inc.*, 739 F.2d 126, 129 (3d Cir. 1984) (internal quotation marks omitted) (citing *Glandiz v. Callinicos*, 140 F.2d 111 (2d Cir. 1944)); *see also Monteiro v. Sociedad Maritima Son Nicolas S.A.*, 280 F.2d 568, 573 (2d Cir. 1960) ("Admittedly §§ 596 [the predecessor to Section 10313] and 597 apply only to 'wages.'"); *Ladzinski v. Sperling S.S. & Trading Corp.*, 300 F. Supp. 947, 959 (S.D.N.Y. 1969) (finding that payments that arise by operation of law "are not 'wages' in the same sense as wages which have been expressly agreed upon in consideration of services rendered").

Where payments are not "expressly agreed upon in consideration of services rendered," but rather arise by operation of law, they "do not fall within the ambit of legislative concern for prompt payment of earned wages" reflected in the double wage penalty statute. *Ladzinski*, 300 F. Supp. at 959. Similarly, payments made "in the nature of compensation or liquidated damages" are not considered wages, whether or not they arise from a contract. *Merrick Sealand*

*Serv., Inc*, 739 F.2d at 129 (internal quotation marks omitted) (finding that payments to seamen of "continuous wages" upon late payment in a foreign port, provided for in the parties' contract, are not "wages" as they "bear no relation to work performed by the seaman and are not intended to induce such work"); *see also Peterson v. Interocean Ships Inc.*, 823 F.2d 334, 337 (9th Cir. 1987) (finding that "comp pay," that is, earnings due to seaman in addition to base wage for each day he was at sea or in a foreign port, did not constitute wages under Section 10313, because they were received "for something other than services performed").

Here, plaintiffs seek redress under 46 U.S.C. § 11107, which provides for an amount equal to the highest rate of pay from the port of engagement for the engagement of a seaman contrary to a law of the United States. Section 11107 "provides a statutory default to prevailing market wage in the case of an invalid contract." *Flores v. American Seafoods Co.*, 335 F.3d 904, 912 (9th Cir. 2003) (internal quotation marks and citation omitted).[10] Section 11107 payments, which arise by operation of law and are triggered by a breach of contract, are not "expressly agreed upon in consideration of services rendered" and so do not fall within the ambit of legislative concern for prompt payment of earned wages." *Ladzinski*, 300 F. Supp. at 959.[11] In other words, because payments under Section 11107 become effective only "in case of an invalid

---

[10] Plaintiffs claim that the remedy provided by Section 11107 is triggered by defendants' failure to comply with three statutes: (1) Section 10302 which requires a shipowner to provide shipping articles; (2) Section 8701 which requires merchant mariner documents; and (3) Section 8103 which imposes a citizenship or residency requirements. The magistrate judge's findings as to the application of Section 11107 are adopted in their entirety.

[11] In light of the court's finding that Section 11107 payments are not "wages" allowing recovery under the double wage penalty statute, the court need not reach defendants' argument that, as a practical matter, it is impossible for defendants to calculate the balance of wages due under Section 10313. (*See* Defs.' Obj. at 24, 26-29.) Nor need the court reach defendants' second objection, that plaintiffs cannot recover double penalty wages because there was a *bona fide* dispute as to the amounts owed. (*Id.* at 26-29.)

contract," they are payments due "for something other than services performed." *See Peterson*, 823 F.2d at 337. As such, they do not constitute "wages" for purposes of Section 10313. *Id.*

The court concurs with defendants' distinction of the two cases cited by the magistrate judge in support of her recommendation that the court allow recovery under both Sections 11107 and 10313. *See generally Maughan v. Tracey Anne, Inc.*, 141 F.3d 1177 (9th Cir. 1998); *Gruver v. Lesman Fisheries, Inc.*, 409 F. Supp. 2d 1263 (W.D. Wa. 2005). Neither case directly addressed whether Section 11107 payments could be considered "wages" for purposes of the state wage penalty statutes in issue. Nor did either case award damages pursuant to both statutes. Similarly, this court does not interpret *Kossick* as supporting the position that Section 11107 payments are unpaid wages triggering the penalty wage statute. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 735 n.4 (1961) ("In our law the seaman who ships without articles can recover the highest wages paid at the port of embarcation, as well as subjecting the master who took him on board to penalties, 46 U.S.C. §§ 564, 578."). As defendants' note, *Kossick* made no mention of the penalty wage statute, then found at 46 U.S.C. § 596, citing instead to other civil penalties provisions.

Finally, even if plaintiffs were entitled to double penalty wages as a matter of law, they still fail to show that they are entitled to such penalties despite the extensive discovery and motion practice engaged in during this protracted litigation. Section 10313 applies only to plaintiffs engaged in foreign vessels. *See* 46 U.S.C. § 10301. The magistrate judge found, and the parties do not contest, that neither party submitted admissible evidence that plaintiffs were engaged in foreign voyages. (R & R at 8 n.1.) At summary judgment, plaintiffs may not rely on "[c]onclusory allegations, conjecture, and speculation" in opposing defendants' motion. *Kerzer*, 156 F.3d at 400. As plaintiffs do not set out specific facts showing a genuine issue for

trial as to whether they were engaged in foreign voyages, they fail to meet their burden under Fed. R. Civ. P. 56(e).  Thus, defendants' motion for summary judgment is granted to the extent that plaintiffs may not seek double penalty wages under Section 10313.

**IV.      Laches Defense**

The magistrate judge recommended that there be no disposition of any motion based on laches at this time, because the parties have not yet briefed certain facts necessary to determine which party bears the burden of proof on the doctrine of laches.  Specifically, the magistrate judge maintains that the parties had not yet presented sufficient evidence to permit a determination as to:  (1) which state's law would apply here and what the applicable state law provides; (2) when plaintiff Felkowski knew that his engagement was contrary to U.S. law; or (3) the prejudice suffered by defendants as a result of the alleged delay.  (R & R at 31-33.)  Defendants object on grounds that the parties did not brief the laches issue at the direction of the court ,the applicable statute of limitations should be borrowed from federal, not state, law, and that the laches issue applies to plaintiffs other than Felskowski.  (Defs.' Obj. at 30-33.)

Both parties concede that, although the laches issue was briefed in the *Felskowski* litigation, no additional briefing took place after class certification.  (Defs.' Obj. at 32-33; Pls.' Resp. to Defs.' Obj. at 6.)  The court agrees with defendants that the parties properly refrained from briefing the laches issue based on the court's instructions at the November 2007 hearing setting the briefing schedule, in which the court specifically advised the parties that they were not to brief the issue at this time.  (*See* Hearing Tr. dated Nov. 7, 2007 at 9-16.)  Accordingly, the court draws no adverse inference against the parties from their failure to discuss the laches issue in their summary judgment briefing in the class action.  Defendants' motion is denied

without prejudice to renew, on the ground that consideration of their substantive arguments is premature at this juncture, in light of the lack of opportunity to brief the issue.

## V.      Defendants' Additional Objections to the R & R

Defendants list eleven particular objections to the R & R, and, as a twelfth objection, "object to each and every finding that is adverse to them in the R & R." (Defs.' Obj. at 33-34.) These objections are merely a reiteration of the arguments raised in the motion briefs. The Second Circuit has held that referring the court to previously filed papers or arguments, without more, is a procedural default. *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) ("merely referring the court to previously filed papers or arguments does not constitute an adequate objection under. . . Fed. R. Civ. P. 72(b)"); *Schoolfield v. Department of Corrections*, 91-Civ-1691, 1994 WL 119740 *2 (S.D.N.Y., April 6, 1994) (finding that restating the relief sought in the motion and the facts upon which the party grounds the complaint is not a proper objection to a report and recommendation). Accordingly, any objections to the recommendations concerning these arguments are deemed waived. The court agrees with plaintiffs that each of these *ad hoc* objections were appropriately addressed in the magistrate judge's R & R. (*See* Pls.' Response to Defs.' Obj. at 7.) Finding no clear error in these portions of the R & R, the court adopts them in their entirety.

**CONCLUSION**

For the reasons set forth above, the R & R is modified to the extent that defendants' motions to compel arbitration as to the eight plaintiffs for whom defendants produced executed copies of the Standard Terms and for summary judgment as to the penalty wage statute under 46 U.S.C. § 10313 are granted. The court adopts the R & R in all other respects.


SO ORDERED


DATED:      Brooklyn, New York
            March 26, 2010

                                          _____/s/_____
                                          DORA L. IRIZARRY
                                          United States District Judge