UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SYLVESTER DZIENNIK, MIECZYSLAW :
KIERSZTYN, FERDYNAND KOBIEROWSKI, :
individually and on behalf of all persons :
similarly situated, :
:
                    Plaintiffs, :    **MEMORANDUM AND ORDER**
:    05-CV-4659 (DLI)(MDG)
                -against- :
:
SEALIFT, INC., FORTUNE MARITIME, :
INC., SAGAMORE SHIPPING, INC., :
VICTORY MARITIME, INC., :
:
                    Defendants. :
-----------------------------------------------------------------x
MIECZYSLAW KIERSTIN, :
:
                    Plaintiff, :
:
                -against- :    **MEMORANDUM AND ORDER**
:    06-CV-5305 (DLI)(MDG)
M/V ADVANTAGE, :
:
                    Defendant. :
:
-----------------------------------------------------------------x
JOSEF FELSKOWSKI, :
:
                    Plaintiff, :
:
                -against- :    **MEMORANDUM AND ORDER**
:    04-CV-1244 (DLI)(MDG)
SEALIFT, INC., SAGAMORE :
SHIPPING, INC., :
:
                    Defendants. :
:
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

       Plaintiffs bring this class action against defendants Sealift, Inc. ("Sealift"), Fortune Maritime Inc. ("Fortune"), Sagamore Shipping, Inc. ("Sagamore") and Victory Maritime, Inc.

("Victory") (collectively the "Defendants") for violations of federal maritime law.  Plaintiff Josef Felskowski ("Felskowski") brings his individual action against defendants Sealift and Sagamore seeking the same relief.  On March 16, 2009, the Hon. Marilyn D. Go, United States Magistrate Judge, issued a Report and Recommendation ("R&R") on Defendants' motion for summary judgment and to compel arbitration, and Plaintiffs' motion for partial summary judgment. (R&R, Doc. Entry No. 109)[1]; *see also Dziennik v. Sealift, Inc.*, 2009 WL 6302821 (E.D.N.Y. Mar. 16, 2009).  On March 26, 2010, the Court adopted in part and modified in part the R&R and: (1) granted partial summary judgment in favor of the class for redress under 46 U.S.C. § 11107 for Defendants' violations of 46 U.S.C. §§ 1302, 8103(b), and 8701; (2) granted summary judgment in favor of Defendants on Plaintiffs' double penalty wage claims under 46 U.S.C. § 10313; and (3) denied without prejudice Defendants' motion for summary judgment on laches grounds.  *See Dziennik v. Sealift, Inc.*, 2010 WL 1191993 (E.D.N.Y. Mar. 26, 2010).

On June 1, 2010, Defendants were granted leave to renew their summary judgment motion on laches grounds and Plaintiffs were granted permission to file a motion regarding the analogous statute of limitations to apply for laches purposes.  (6/01/10 Order; *see also* Defs.' Mem. in Supp. of Mot. for Summ. J. or Partial Summ. J. on the Grounds of Laches ("Def. Mem."), Doc Entry No. 138; Pls.' Mem. on Issue of Laches ("Pl. Mem."), Doc Entry No. 141.) For the reasons set forth below, Defendants' motion on the ground of laches is denied.

## BACKGROUND

This memorandum assumes the parties' familiarity with the cases' factual background and procedural history, as set forth in the R&R and in *Dziennik v. Sealift, Inc.*, 2010 WL 1191993 (E.D.N.Y. Mar. 26, 2010).

---

[1] Unless otherwise specified, all docket entry citations are to the lead case, *Dziennik v. Sealift, et al.*, 05-cv-4659 (DLI)(MDG).

**I.    Procedural History**

On March 25, 2004, Plaintiff Felskowski brought an individual action, against Defendants Sealift and Sagamore, *Felskowski v. Sealift, Inc., et al.*, 04-cv-1244 (DLI)(MDG), for personal injuries, breach of a collective bargaining agreement, violations of the Federal Labor Standard Act ("FLSA"), 29 U.S.C. § 106, and violations of federal maritime law. (*See* Complaint, 04-cv-1244, Doc. Entry No. 1; Am. Complaint dated 2/14/05, 04-cv-1244, Doc. Entry No. 15.)

On October 3, 2005, class Plaintiffs brought a class action against Sealift defendants, *Dziennik v. Sealift, Inc., et al.*, 05-cv-4659 (DLI)(MDG), alleging violations of federal maritime law under Sections 10313 and 11107 of the Merchant Seamen Protection and Relief Act ("MSPRA"), 46 U.S.C. § 10101, *et seq*. (Complaint, Doc. Entry No. 1; Am. Compl. dated 4/7/10, Doc. Entry No. 122.) Class certification was granted on May 29, 2007 and the class action was consolidated with Felskowski's individual action on the parties' consent. (*See Dziennik v. Sealift*, 2007 WL 1580080 (E.D.N.Y. May 29, 2007); 11/2/07 Minute Entry, Doc. Entry No. 68.)[2] The class is composed of 209 seafaring employees, 113 of whom are Polish citizens and 96 of whom are Filipino citizens, employed on U.S. flag vessels owned, managed, or operated by one or more of the Defendants at various times since January 1, 1999. Class plaintiffs sought recovery of unpaid wages, overtime wages, and statutory penalties.[3]

*Kierstin v. M/V Advantage*, 06-cv-5305 (DLI)(MDG), is an *in rem* action brought to obtain security in the *Dziennik* action. As *Kierstin* and *Dziennik* involve common questions of

---

[2] For a more detailed description of the class action, see *Dziennik v. Sealift*, 2007 WL 1580080 (E.D.N.Y. May 29, 2007), granting class certification.

[3] Plaintiffs also alleged, *inter alia*, breach of contract, breach of collective bargaining agreement ("CBA"), and FLSA violations, which were either dismissed or withdrawn. *See Dziennik v. Sealift, Inc*., 2006 WL 4586140, at *6 (E.D.N.Y. Aug. 30, 2006) (granting Defendants' motion to dismiss as to the breach of the CBA claim and denying as to the claims of breach of employment contract and violation of 46 U.S.C. §§ 10313 and 11107; noting Plaintiffs voluntarily withdrew FLSA claims).

law and fact, the two cases were consolidated on October 31, 2006 on the parties' consent. (Consolidation Order, Doc. Entry No. 42.)

On March 26, 2010, the R&R on the cross-motions for summary judgment was adopted in part and modified in part. *Dziennik*, 2010 WL 1191993, at *11. Plaintiffs had moved for partial summary judgment on the application of 46 U.S.C. §§ 10313 and 11107 to their claims and the Sealift defendants cross-moved for summary judgment and to compel arbitration of the claims of the Filipino plaintiffs or to dismiss those claims for improper venue under Federal Rule of Civil Procedure 12(b)(3).

Plaintiffs' motion for summary judgment was granted for redress under 46 U.S.C. § 11107 for Defendants' violations of 46 U.S.C. §§ 10302, 8103(b), and 8701. Defendants' motion to compel arbitration was granted as to the eight Plaintiffs for whom Defendants produced executed copies of the Philippines Overseas Employment Administration Standard Terms and Conditions only, but denied as to the remaining plaintiffs. The Court further granted Defendants' motion for summary judgment as to the applicability of the double wage penalty statute, 46 U.S.C. § 10313, finding that Plaintiffs were not entitled to double wage penalties for amounts recovered under 46 U.S.C. § 11107. In addition, the Court denied without prejudice Defendants' motion for summary judgment to bar the federal wage claims by the doctrine of laches, finding the consideration of substantive arguments premature.

On June 1, 2010, the parties were granted leave to renew their respective motions on laches and, on August 4, 2010, the Defendants submitted a summary judgment motion and Plaintiffs submitted a memorandum as to laches. (Def. Mem., Doc. Entry No. 138; Pl. Mem., Doc. Entry No. 141.) On October 22, 2012, the parties submitted supplementary memoranda in

support of their respective motions as to laches. (Def. Supp. Mem., Doc. Entry No. 183; Pl. Supp. Mem., Doc. Entry No. 184.)

## II. Factual Background

The named Plaintiffs are members of a class of Polish and Filipino citizens who were employed on U.S. flag vessels owned, managed, or operated by one or more of the defendants. *See Dziennik v. Sealift, Inc.*, 2009 WL 6302821, at *2 (E.D.N.Y. 2009). Sealift acted as managing agent for each of these vessels. *Id.* All of the class representatives admitted they are not United States citizens or resident aliens, and that they do not possess merchant mariners' documents. (Defs. Rule 56.1 Statement ("Defs. 56.1") ¶ 3, Doc. Entry No. 139; Pls. Rule 56.1 Statement ("Pls. 56.1") ¶ 3.) All of the class representatives also admitted they signed employment contracts with Defendants that set forth the wages they were to be paid and all class members were fully paid in accordance with those contracts. (Defs. 56.1 ¶¶ 4, 5; Pls. 56.1 ¶¶ 4,5.)

Plaintiffs' claim for redress under 46 U.S.C. § 11107 is triggered by Defendants' violations of 46 U.S.C. §§ 10302, 8103(b), and 8701. Defendants violated 46 U.S.C § 10302 by failing to provide Plaintiffs with shipping articles that included certain mandatory, enumerated terms as required by the statute. (R&R at 9-11.) The employment contracts Plaintiffs signed did not contain the required terms and, as such, do not constitute shipping articles. (*Id.*) Defendants also violated 46 U.S.C. § 8103(b) by hiring Plaintiffs who were unlicensed seamen, not United States citizens, aliens lawfully admitted to the United States for permanent residence, or foreign nationals enrolled in the Unites States Merchant Marine Academy. (R&R 11-21.) Lastly, Defendants violated 46 U.S.C. §§ 8701, as Plaintiffs did not have merchant mariner documents,

as required by the statute, nor did the employment contracts contain the information contained in merchant mariner documents. (R&R at 22.)

## LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

## DISCUSSION

The statute on which relief is sought, Section 11107 of the Seaman's Wage Act, 46 U.S.C. § 10301, *et seq*., does not contain a statute of limitations. In admiralty actions, courts employ the equitable doctrine of laches to determine the timeliness of claims. *See DeSilvio v. Prudential Lines*, 701 F. 2d 13, 15 (2d Cir. 1983); *Hill v. W. Bruns & Co.*, 498 F. 2d 565, 568

(2d Cir. 1974); *Guenthre v. Sedco, Inc.*, 1998 WL 898349, at *3 (S.D.N.Y. Aug. 20, 1998). "In analyzing whether a party is guilty of laches, a district court may not mechanically apply the local statute of limitations, as [e]quity eschews mechanical rules; it depends on flexibility." *DeSilvio*, 701 F. 2d at 15 (citing *Gardner v. Panama R.R. Co.*, 342 U.S. 29, 30-31 (1951); *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)) (internal citations and additional quotations omitted). "Therefore, the court must balance various factors in determining whether laches exist." *Id.*

In analyzing the laches arguments, courts must consider: (1) an analogous statute of limitations; (2) whether plaintiff delayed in filing her claims; and (3) whether the delay, if any, unfairly prejudices defendant. *Id.* "These questions are to be evaluated in light of the 'peculiar equitable circumstances' of the case." *Id.* (internal citations omitted).

Defendants argue that Plaintiffs' claims under Section 11107 should be dismissed pursuant to the laches doctrine or, in the alternative, the period of time for recovery of damages should be considerably shortened. (Def. Mem. at 2.) Plaintiffs argue their claims under Section 11107 are not barred by the laches doctrine and they are entitled to wage underpayment of the highest rate of pay for the full time period certified for the class action; namely, a six-year period beginning January 1, 1999. (Pl. Mem. at 3.)

## I. The Analogous Statute of Limitations

Generally, courts apply the limitations period of the most analogous state law cause of action to the instant claim to determine the applicable statute of limitations. *Graham County Soil & Water Conservation Dist. v. United States*, 545 U.S. 409, 417 (2005); *North Star Steel Co. v. Thomas*, 515 U.S. 29, 33-34 (1995); *Sandberg v. KPMG Peat Marwick, LLP*, 111 F. 3d 331, 336 (2d Cir. 1997).

A "narrow" exception to the general rule permits reference to federal law only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Sandberg*, 111 F. 3d at 336 (quoting *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989)); *North Star Steel Co. v. Thomas*, 515 U.S. at 35 ([noting] the reference to federal law is the exception). "[W]hen the state limitations periods with any claim of relevance would frustrate or interfere with the implementation of national policies, or be at odds with the purpose or operation of federal substantive law, we have looked for a period that might be provided by analogous federal law, more in harmony with the objectives of the immediate cause of action. *North Star Steel Co. v. Thomas*, 515 U.S. at 34-35 (internal quotations and citations omitted).

Here, the Court applies the doctrine of laches on claims for wages by Plaintiffs under 46 U.S.C. § 11107 for Defendants' violation of the requirements in 46 U.S.C. §§ 10302, 8103(b), and 8701. Section 11107 provides:

> An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher.

46 U.S.C. § 11107. Plaintiffs' claims triggering the remedy under Section 11107 are Defendants' failure to comply with three statutes: (1) Section 10302, requiring a ship owner to execute a shipping articles agreement in writing with each seaman that contains the mandatory, enumerated terms; (2) Section 8103(b), requiring each unlicensed seaman to be a United States citizen, a legal permanent resident, or a foreign national enrolled in the United States Merchant Marine Academy; and (3) Section 8701, requiring every individual serving on a vessel to have merchant mariner documents. *See* 46 U.S.C. §§ 10302, 8103(b), 8701. With regard to

Defendants' violation of Section 10302, the employment contracts executed by Plaintiffs and Sealift are deficient because the contracts: (a) omit the nature of the voyages, including the beginning and/or ending port; (b) omit the number and description of the crew; (c) omit the specific provisions to be provided; and (d) are vague as to the duration of the voyages. *See* 46 U.S.C. § 10302(b)(1), (2), (6).

### A. Federal Statutes of Limitations

Defendants contend that federal law provides the most analogous statute of limitations to the instant claim. Defendants argue that the most analogous statute of limitations is either the six-month period for breach of collective bargaining agreement of the National Labor Relations Act ("NLRA"), 29 USC § 160(b), or the two-year period for non-willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 255(a). (Def. Mem. at 6-7.) Plaintiffs argue it is not appropriate to borrow from federal law in this instance and the most analogous statutes of limitations are either the six-year period for wage claims under the New York State Labor Law Article 6, §198(3) or the six-year period to recover equitable claims in quasi-contract or contract under New York Civil Practice Law and Rules ("CPLR") § 213(1), (2). (Pl. Mem. at 10, 13-17.)

First, there are no claims in these cases related to a collective bargaining agreement ("CBA") or contracts resembling a CBA. Moreover, Plaintiffs are not part of a union and are not beneficiaries of the advantages of a union. Therefore, the six-month period for breach of collective bargaining agreement of the NLRA, 29 USC § 160(b), is not analogous to the instant claim.

Second, the two-year FLSA statute of limitations is similarly not analogous. In employing the doctrine of laches, the court in *Brown v. Royal Caribbean Cruises, Ltd.*, 2000 WL 34449703, at *3 (S.D.N.Y. Aug. 24, 2000), applied the three-year federal limitation period of the

9

FLSA for "willful" violation of its provisions. The court reasoned that plaintiffs' claims seeking payment of overtime wages, penalty wages under 46 U.S.C. § 10313, and punitive damages, were analogous to the FLSA, which provided for repayment of unpaid overtime wages and an additional "penalty" wage. *Id.* Also, the period complied with the "equitable circumstances" of the case, because the three-year limitation period matched the period specified under Norwegian law to which the parties had bound themselves by agreement. *Id.* at 4.

Here, Plaintiffs' claims are not for unpaid wages or overtime wages and the penalty wage claims under Section 10313 have been dismissed. In dismissing the Section 10313 claims, the Court held that claims under Section 11107 do not constitute wages. "Section 11107 payments, which arise by operation of law and are triggered by a breach of contract, are not 'expressly agreed upon in consideration of services rendered' and so do not 'fall within the ambit of legislative concern for prompt payment of earned wages.'" *Dziennik*, 2010 WL 1191993, at *9 (quoting *Ladzinski v. Sperling S.S. & Trading Corp.*, 300 F. Supp. 947, 959 (D.C.N.Y. 1969)). Moreover, the statutes that trigger Section 11107 are not related to unpaid wages and instead concern improper shipping articles and Defendants' unlawful hiring practices.

As "resort to state law remains the norm for borrowing of limitations periods" and neither federal statute advanced by Defendants is analogous to Plaintiffs' claims, the Court will look to New York law to determine the analogous statute of limitations. *See DelCostello v. Intern'l Bhd. of Teamsters*, 462 U.S. 151, 171-72 (1983).

### B. New York State Statutes of Limitations

Defendants contend the most analogous New York State statute is the three-year period found in CPLR § 214(2) for an action "to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in section 213 and 215." CPLR § 214(2). Section 214(2)

only governs liabilities that would not exist but for a statute. *Hollander v. Breznoff*, 582 F. Supp. 1516 (S.D.N.Y. 1984), *aff'd*, 787 F. 2d 834 (2d Cir. 1986). Liability as a legal term includes every kind of legal obligation, responsibility or duty. *Hartnett v. New York City Transit Authority*, 200 A.D. 2d 27, 30 (2d Dep't 1994) (citing *Mayfield v. First Nat. Bank of Chattanooga, Tenn.*, 137 F. 2d 1013, 1019 (6th Cir. 1943)). "Liability may arise from contract, express or implied, from duty imposed by law, or by judgment of a court, or as a consequence of tort committed." *Id.* (finding the term "liability" in CPLR § 214(2) should be read broadly).

Plaintiffs argue that CPLR § 214(2) cannot be the applicable statute of limitations, because the statutory requirement for written articles is based in General Maritime Law and, therefore, liability would exist even in the absence of a statute. In *The Lily*, the court looked at the legislative history of statutes requiring written articles for seamen and rejected plaintiffs' contention that "even in absence of statute[,] a written agreement with seamen before proceeding on a voyage . . . is required by the general maritime law." *The Lily*, 69 F. 2d 898, 900 (9th Cir. 1934) (citing *U.S. v. the Grace Lothrop*, 95 U.S. 527 (1877)).

Moreover, Plaintiffs here did have written, if insufficient, employment contracts with Defendants and were paid the wages due under those contracts. The claims underlying recovery under Section 11107 is that the written articles did not include all the required elements enumerated in the statute and Defendants employed seamen who did not meet the statutory requirements of residency or documents. Plaintiffs have a claim because Section 11107 operates to invalidate the employment contracts for failing to comply with the statutory requirements and provides a statutory default to prevailing market wage. Plaintiffs would not be entitled to the remedy of the highest rate of wages but for these statutory requirements and the statutory remedy provided by Section 11107.

Plaintiffs additionally argue that the six-year periods under New York Labor Law Article 6 or under CPLR § 213(1) and (2) are more analogous to the instant claim. First, Labor Law Article 6 does not apply because Plaintiffs' claims are not for unpaid wages or overtime wages and, as explained above, recovery under Section 11107 does not constitute wages. (*See infra* Part I.A.) Second, CPLR § 213(1), which covers "an action for which no limitation is specifically prescribed by law," does not apply because the instant action is not for equitable relief for unjust enrichment, rather Defendants violated the statutory requirements of federal maritime law and, therefore, Plaintiffs are entitled to the remedy provided by Section 11107. Third, CPLR § 213(2), which covers "[a]n action upon a contractual obligation or liability," does not apply because the instant claims are not for breach of contract as Plaintiffs withdrew those claims. Moreover, the relationship between Plaintiffs, the seamen, and Defendants, their employer, is not one arising from contract.

Accordingly, the most analogous New York state statutory period of limitations is the three-year period pursuant to CPLR § 214(2).

### C. New York Borrowing Statute

For actions brought by non-residents and "based upon a cause of action accruing without the state," the New York "borrowing statute," CPLR § 202, prevents application of any limitation period longer then the "time limited by the laws of either the state or the place without the state where the cause of action accrued." CPLR § 202. "New York courts interpreting the borrowing statute hold that the cause of action accrues in the place of the injury, and 'where an injury is purely economic, the place of injury is usually where the plaintiff resides and sustains the economic impact of the loss.'" *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 374 (S.D.N.Y. 2004) (quoting *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y. 2d 525, 529 (1999)).

As Plaintiffs seek to recover for injuries that are purely economic, any injuries sustained took place in Plaintiffs' places of residence; namely, Poland and the Philippines.

Plaintiffs contend that the borrowing statute does not apply because their economic loss was sustained on the high seas as Plaintiffs were paid for their labor on the vessels. (Pl. Reply Mem. at 20-21; Pl. Supp. Mem. at 6.) Plaintiffs do not cite any cases in support of this contention. In addition, Plaintiffs argue that the vessels are the functional equivalent of Plaintiffs' place of residence.[4]

In applying the New York borrowing statute, courts have consistently found the place of residence to be where a plaintiff sustains economic injury. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 2001 WL 492363, at *3-4 (S.D.N.Y. 2001) (finding "post- *Global Financial* case law" establishes that when an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss); *see also Precaspian Dev. Corp. (Texas) v. Royal Dutch Shell PLC*, 2009 WL 1564110, at *8 (S.D.N.Y. June 3, 2009) (corporation's declaratory judgment action for unjust enrichment accrued in state of residence under CPLR § 202). An exception to this rule, is "[w]here a plaintiff 'maintains a separate financial base' and where the impact of the financial loss is felt at that location." *Baena v. Woori Bank*, 2006 WL 2935752, at *6 (S.D.N.Y. Oct. 11, 2006). Such is not the case here. Plaintiffs' employment on the vessels was temporary and transitory, and the vessels were neither their legal residence nor a separate financial base. As such, the borrowing statute applies and the Court must determine whether either Polish or Philippine law provides a statute of limitations for Plaintiffs' claims shorter than three years.

---

[4] Plaintiffs argue they spent approximately ten months out of each year on the vessels and, by analogy, under New York law, an individual is considered a New York resident if she spends, in the aggregate, more than 183 days of a taxable year in New York. Plaintiffs do not mention the additional requirement under the New York tax law that the individual maintain a permanent place of abode, even when not in the state. *See* N.Y. Tax Law § 605(b). Plaintiffs' argument is not convincing.

Both parties submit the affirmations of experts in Polish and Philippine law regarding the statutes of limitations that should be applied under the borrowing statute. Defendants argue that Plaintiffs' claims are subject to the three-year limitations period applicable to claims arising out of the employment relationship pursuant to Article 291 of the Polish Labor Code and the three-year limitations period applicable to money claims arising from employer-employee relations pursuant to Article 291 of the Philippines Labor Code. (*See* Defs. Mem. in Opp. at 10-11, Decl. of Dr. Roman Olszewski dated Aug. 24, 2010 ¶¶ 7-8, Decl. of Arturio del Rosario, Jr. dated Aug. 24, 2010 ¶¶ 7-8, 15)

Plaintiffs' experts do not challenge the credibility or accuracy of Defendants' expert testimony that the three-year limitations period are applicable to claims arising out of the employment relationship under Polish and Philippine law. Instead, Plaintiffs' experts disagree as to the most analogous statute of limitations under Polish and Philippine law and point to statutes of limitations in excess of three years. Under the borrowing statute, a statute of limitations longer than that applicable under New York law cannot apply. Thus, the shortest possible period of limitations in foreign law applicable here is three years, which is the same as the three-year period under New York law. Therefore, a three-year period of limitations applies.

## II. Equities

In admiralty actions, "[t]he analogous state statute of limitations merely determines where the burden of proof falls if a plaintiff files a complaint within the analogous statutory period the burden of proving unreasonable delay and prejudice falls on the defendant." *Chretien v. Exxon Co., U.S.A.*, 701 F. Supp. 266, 271 (D.N.H. 1988) (citing *Azalea Fleet v. Dreyfus Supply and Machinery Corp.*, 782 F. 2d 1455, 1459 (8th Cir.1986)). "[W]hen the suit has been brought after the expiration of the state limitation period, a court applying maritime law asks

why the case should be allowed to proceed; when the suit, although perhaps long delayed, has nevertheless been brought within the state limitation period, the court asks why it should not be." *DeSilvio*, 701 F. 2d at 16.

This Court notes that the Second Circuit "has long been committed to the proposition that dismissal of an action with prejudice is a drastic remedy which should be applied only in extreme circumstances." *Tamini v. Jewon*, 808 F. 2d 978 (2d Cir. 1987) (discussing whether dismissal on laches grounds is appropriate without holding a hearing). "Determining whether a claim is barred by laches is, therefore, often not amenable to resolution on a motion for summary judgment." *Shiotani v. Walters*, 2012 WL 6621279, at *5 (S.D.N.Y. Dec. 3, 2012).

### A. Unclean Hands

Plaintiffs' contend that the defense of laches is unavailable to Defendants because a party with unclean hands may not assert laches and, therefore, any delay is not unreasonable. Plaintiffs claim Defendants' hands are unclean because they intentionally failed to follow the maritime statutes governing the hiring of seamen and used foreign workers to avoid having to pay proper wages. (Pl. Opp. at 21.)

"[W]here one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage." *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 234 (1959) (laches defense unavailable if plaintiff could prove defendant's agents misled him to believe he could bring action within seven years); *see also Dickey v. Alcoa S.S. Co., Inc.*, 641 F.2d 81, 82 (2d Cir.1981) (where plaintiff failed to make allegations that he was misled or induced by false statements into signing the release, defendant's hands were not "unclean"). The crux of the "unclean hands" maxim is that a

defendant's misconduct affected the plaintiff directly, either by causing plaintiff's delay or injury. *See Serdarevic v. Advanced Medical Optics Inc.*, 532 F. 3d 1352, 1361 (Fed. Cir. 2008) ("[A] plaintiff relying on the unclean hands doctrine to defeat a defense of laches must show not only that the defendant engaged in misconduct but moreover that the defendant's misconduct was responsible for the plaintiff's delay."); *Yeda Research & Dev. Co. v. Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 629-30 (S.D.N.Y. 2006); *see also Mason v. Jamie Music Pub. Co.*, 658 F. Supp. 2d 571, 588 (S.D.N.Y. 2009) ("Courts enforce the doctrine of unclean hands 'where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is directly related to the subject matter in litigation and has injured the party attempting to invoke the doctrine." (internal quotations omitted)).

Here, Plaintiffs argue that Defendants have knowingly engaged in unlawful hiring practices contrary to the statutory requirements of federal maritime law for many years and reaped great economic benefit by avoiding payment of proper wages to foreign seamen. (Pl. Opp. at 18.) Plaintiffs do not demonstrate how this allegedly willful misconduct against other foreign seamen has injured them, nor have Plaintiffs alleged that Defendants misled or induced Plaintiffs to delay bringing their suits. Plaintiffs argue that Defendants concealed the fact that Plaintiffs had rights under American law and, therefore, each Plaintiff believed he only had the benefits of Polish or Philippine law. (*See* Pl. Opp. at 23.) Despite Plaintiffs' assertions that Defendants "misrepresented the truth," they do not provide any factual allegations that serve as evidence of Defendants' misconduct. As Plaintiffs have failed to show that Defendants' hands are unclean, Defendants may invoke the equitable doctrine of laches.

**B. Delay**

1. When Claims Accrued

It is well settled that the laches period begins to run when the plaintiff discovers the facts that create his right or cause of action. *Preston v. Am. Fed'n of Television and Radio Artists*, 2002 WL 1009458, at *3 (S.D.N.Y. May 16, 2002) (citing *White v. Daniel*, 909 F. 2d 99, 102 (4th Cir. 1990); *Dixon v. A.T.&T. Co.*, 159 F. 2d 863, 864 (2d Cir. 1947); *H & R Indus., Inc. v. Kirshner*, 899 F. Supp. 995, 1006 (E.D.N.Y. 1995)). "[T]he plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893).

There are material issues of fact regarding the time that the claims began to accrue. Defendants argue that class representative Dziennik was aware as of the summer of 2000 that he was being paid less than the U.S. seamen on board the Cleveland and thought he should be paid more. (Defs. 56.1, ¶ 7.) Specifically, they assert that Dziennik testified he worked on the Cleveland from June 10, 2000 until September 24, 2000 with a crew of different nationalities. (Ex. C at 30:4-5.) He testified he was the only electrician on board and that "[p]eople were mentioning . . . why are your earnings so little? Because, for example, American electricians earn much more." (Ex. C at 30:8-11.)[5]

Plaintiffs, on the other hand, argue that Dziennik did not learn he might have any rights under United States law until after the filing of the Felskowski lawsuit in 2004. (Pl. Opp. at 22 n.10, 25 n.15.) They cite to deposition testimony where Dziennik discusses a conversation he had in August 2004 with Felskowski: "they established that [Felskowski] wasn't paid properly in

---

[5] Defendants also suggest that Plaintiffs were aware that they were not residents and lacked merchant mariner documents. However, this knowledge is insufficient even under the cases Defendants cite.

accordance with the American prevailing wage. And I reached a conclusion that he did that, you know, why should I be feeling a person of lesser quality than average American?" (Pl. Opp. at 25 n.15.) Plaintiffs contend that none of the Polish crewmembers had any reason to believe they were entitled to wages other than those set forth in their Polish employment contracts. (Pl. Opp. at 25.) In order to determine when the claims accrued based on the deposition testimony, the Court would be required to interpret the testimony or weigh on credibility without the benefit of a full record. Based on these contradictory positions, the Court finds that a determination on the merits is inappropriate at this stage of the case. The time that the claims accrued is crucial to a determination of whether laches is applicable to bar any claims since it will affect which party bears the burden of proof; however, the Court will briefly address the parties' remaining arguments regarding the reason for delay and the extent of prejudice.

2. Reason for Delay

First, Plaintiffs cite as the reason for delay that they were ignorant that American law applied to them. (*See* Pl. Opp. at 23.) It is well established that ignorance of the law does not excuse the initiation of a timely lawsuit. *See, e.g.*, *Morales v. Bull Steamship Co.*, 279 F.2d 299, 301 (1st Cir. 1960). However, Plaintiffs also argue that any delay was due to the size of the lawsuit and the "realities of bringing a lawsuit of this magnitude in our court system." (Pl. Opp. at 27.) The Court notes that this assertion alone appears to be a weak excuse, especially in the absence of additional factual assertions to support such a statement. Yet, when determining whether laches bars a lawsuit under maritime law, there is essentially a sliding scale based on the strength of the excuse and the amount of prejudice. "The *Larios* court made explicit that even a weak excuse (although not a non-existent one) may suffice to defeat laches if the absence of prejudice can be established." *Hartford Fire Ins. Co. v. Callahan Marine Corp.*, 389 F. Supp.

436, 440 (S.D.N.Y. 1975); *see also Larios v. Victory Carriers*, *Inc.,* 316 F. 2d 63 at 67 (2d Cir. 1963) ("[W]here there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." (quotation omitted)). Therefore, the Court turns to the alleged prejudice asserted by the Defendants.

C. **Prejudice**

Prejudice results when a delay "makes it difficult to garner evidence," or where a "change in position" makes it inequitable to allow plaintiff's claim to proceed. *Robins Island Pres. Fund, Inc. v. Southold Dev. Corp.*, 959 F. 2d 409, 424 (2d Cir. 1992).

First, Defendants cannot claim any prejudice under the penalty wage act because those claims have been dismissed. Defendants contend that the Court should follow the line of cases where claims were dismissed due to unfair prejudice because of unfair penalties. Penalty claims are not at issue here. As discussed above, recovery under Section 11107 is not a penalty, unlike recovery under Section 10313.

Second, Defendants contend they are prejudiced because, with the passage of time, documentation is lost or discharged. Specifically, they state that Filipino Class Member POEZ's contracts and Standard Terms containing agreements to arbitrate claims in the Philippines will not be found. However, Defendants contend in their February 13, 2013 Order to Show Cause, that Defendants have produced signed agreements to arbitrate for over two-thirds of the Filipino class members. (Order to Show Cause at 7.) It appears Defendants in this case are not prejudiced due to lost documentation, because pertinent documents they claim cannot be retrieved indeed have been found. Defendants have not shown or articulated unfair prejudice or change in status convincingly or well. "[L]aches is not merely a matter of how much time has

passed—it involves a determination whether it would be inequitable to permit the claim to be enforced in light of some change in the condition or relations of the parties." *Guenther v. Sedco, Inc.*, 1998 WL 898349, at *3 (S.D.N.Y. 1998) (citing *DeSilvio v. Prudential Lines*, 701 F.2d at 15.)

Given that each parties' position regarding excuse and prejudice is weak, the issue of when accrual began becomes pivotal. Without a full record, the Court finds it is not appropriate to determine the applicability of laches to bar any of the Plaintiffs' claims in this motion for summary judgment.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment based on the ground of laches is DENIED. Genuine issues of material fact remain as to the defense of laches. The applicable analogous statute of limitations is three years, pursuant to CPLR Section 214(2). As for claims filed outside the applicable three-year statute of limitation, Plaintiffs bear the burden of proof on those issues. Whereas, for claims filed within the three-year period, Defendants bear the burden of proof.

SO ORDERED.

DATED:    Brooklyn, New York
              September 30, 2013

                                        /s/
                                    DORA L. IRIZARRY
                                  United States District Judge