UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SYLVESTER DZIENNIK, MIECZYSLAW         :
KIERSZTYN, FERDYNAND KOBIEROWSKI,      :
individually and on behalf of all persons :
similarly situated,                    :
                                       :
                 Plaintiffs,           :     **MEMORANDUM & ORDER**
                                       :     05-CV-4659 (DLI)(MDG)
         -against-                     :
                                       :
SEALIFT, INC., FORTUNE MARITIME,       :
INC., SAGAMORE SHIPPING, INC.,         :
VICTORY MARITIME, INC.,                :
                                       :
                 Defendants.           :
-------------------------------------------------------------------x

**DORA L. IRIZARRY, Chief Judge:**

Plaintiffs Sylvester Dziennik, Mieczyslaw Kiersztyn, and Ferdynand Kobierowski, individually and on behalf of all persons similarly situated (collectively, "Class Plaintiffs"), bring this class action against defendants Sealift, Inc. ("Sealift"), Fortune Maritime Inc., Sagamore Shipping, Inc. ("Sagamore"), and Victory Maritime, Inc. (collectively, "Defendants") alleging violations of federal maritime law, specifically under Sections 10313 and 11107 of the Seamen's Wage Act, codified at 46 U.S.C. § 10301, *et seq*.

Class Plaintiffs worked as seafarers aboard U.S. flag vessels under the control of one or more of the Defendants. The class is composed of 209 seafaring employees, 113 of whom are Polish citizens and 96 of whom are Filipino citizens, employed on these vessels during various periods since January 1, 1999. Class Plaintiffs seek recovery of unpaid wages, overtime wages, and statutory penalties from Defendants under employment contracts and federal maritime law.

Presently before the Court is Defendants' June 3, 2015 request for clarification of the Court's March 26, 2010 Order Adopting in Part and Modifying in Part the Report and

Recommendation specifically with respect to arbitration of the Filipino plaintiffs' claims. (*See generally* Order Adopting in Part and Modifying in Part Report and Recommendation ("March 26 2010 Order"), Dkt. Entry No. 119.)[1] That decision granted Defendants' motion to compel arbitration as to the eight plaintiffs for whom Defendants produced executed copies of the Philippines Overseas Employment Administration ("POEA") Standard Terms and Conditions (the "Standard Terms") while denying compelled arbitration as to the remaining plaintiffs. (*Id.* at 2, 7.)

On October 15, 2013, Defendants filed a motion to compel arbitration of an additional fifty-five Filipino class members who had signed one or more POEA contracts accompanied by signed Standard Terms containing arbitration agreements. (Defendants' Memorandum of Law in Support of Motion to Compel Arbitration of 55 Filipino Class Members' Claims ("Def. Mem. of Law to Compel Arbitration") at 1, Dkt. Entry No. 210.) When Defendants located three additional Filipino seafarers who qualified for class representation, Defendants added them to the Filipino class of plaintiffs.

Pursuant to the law of the case doctrine, Defendants contend in the instant request that the claims of the fifty-eight additional Filipino class members also must be compelled to arbitration in the Philippines as were the original eight. (Defendants' June 2, 2015 Letter at 2, Dkt. Entry No. 227.) Plaintiffs counter that arbitration may not be compelled for those employment periods in which signed POEA contracts containing arbitration clauses have not been produced consistent with the March 26, 2010 Order. (Plaintiffs' June 12, 2015 Letter at 3, Dkt. Entry No. 229.)

---

[1]  On August 4, 2016, Defendants indicated that they "expect clarification of the Court's prior Order on arbitration [which is the subject of this Memorandum and Order] . . . may contribute greatly to resolution of this case." (Dkt. Entry No. 235.)  Accordingly, Defendants' motion for Partial Summary Judgment on the meaning of the terms "engaged" and "engagement" in 46 U.S.C. § 11107 (Dkt. Entry No. 232) will be terminated without prejudice to reinstate following another settlement conference with the magistrate judge.

2

For the reasons set forth below, the Court finds that arbitration in the Philippines is compelled for the fifty-eight additional Filipino seafarers for whom Defendants have produced signed and executed copies of the POEA contracts containing arbitration clauses and only for the employment periods covered by those contracts.

**DISCUSSION**

**I.     Summary of the Parties' Arguments**

This Memorandum & Order is written for the benefit of the parties and familiarity with the underlying facts and issues is presumed.[2] Defendants contend that the law of the case doctrine mandates that all Filipino class members should be compelled to arbitrate all employment related causes of action in the Philippines. (*Id.*) Moreover, Defendants argue that POEA contracts, including arbitration clauses, are standardized and required by Philippine law. (*Id.* at 4.) According to Defendants, their production of 118 POEA contracts with signed Standard Terms containing agreements to arbitrate for fifty-eight additional Filipino class plaintiffs is sufficient to demonstrate the applicability of compulsory arbitration for all relevant employment periods. (*Id.* at 3.) Defendants further argue that they should not be held to the stringent standard of producing POEA contracts containing arbitration clauses for each employment period for every Filipino class plaintiff because they were unduly prejudiced by Class Plaintiffs' delay in bringing this action and by Magsaysay's[3] document production policies. (*Id.*)

Class Plaintiffs counter that, because the Filipino seafarers worked during multiple employment periods, Defendants must produce POEA contracts containing arbitration

---

[2]     For a more detailed description of the class action, see *Dziennik v. Sealift*, 2007 WL 1580080 (E.D.N.Y. May 29, 2007), granting class certification.

[3]     Magsaysay is the Philippine crewing agency that executed the POEA contracts at issue.

agreements for all employment periods of any seafarer. (Plaintiffs' June 12, 2015 Letter at 2.) Class Plaintiffs interpret the March 26, 2010 Order as requiring arbitration only for specific employment periods in which the seafarer specifically agreed to arbitration as evidenced by a signed contract incorporating an arbitration provision.

**II.     Clarification of the March 26, 2010 Order**

The March 26, 2010 Order clearly held that "arbitration cannot be compelled as to any plaintiffs for whom defendants have not produced executed Standard Terms because defendants have not established the existence of an agreement to arbitrate by a preponderance of the evidence." (March 26, 2010 Order at 7.) The Court reached this conclusion in reliance on such cases as *Howsman v. Dean Witter Reynolds, Inc.* that declared, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  537 U.S. 79, 83 (2002).  The Court further adopted the magistrate judge's recommendation concerning the enforceability of the arbitration provision by stating that:

> [O]nly one version of the employment contracts produced by defendants for the Filipino plaintiffs arguably incorporates the POEA's Standard Terms and Conditions, which sets forth the arbitration provision that defendants seek to enforce. (R & R at 35-40.) Moreover, the executed Standard Terms are attached to only eight of the ninety-four employment contracts produced by defendants. Under these circumstances, the court cannot order other plaintiffs for whom defendants failed to provide executed copies of the Standard Terms to submit to arbitration in the absence of evidence that they agreed to be bound by such terms.

(March 26, 2010 Order at 7.)

This language clearly requires the physical production of contracts containing express arbitration agreements in order to compel those Filipino plaintiffs to arbitrate their claims in the Philippines. The arbitration agreements are enforceable as to those specific employment periods for which POEA contracts containing arbitration provisions are produced. Therefore, the Court finds that Defendants only can compel to arbitration the original eight Filipino plaintiffs as well

as the recently discovered fifty-eight seafarers, but only for those employment periods for which signed POEA contracts containing arbitration clauses have been produced. Notwithstanding the argued hardship that the Court's decision may visit upon Defendants in the form of their inability to locate the other contracts at issue, the Court requires the parties' compliance with its March 26, 2010 Order.

## III. Application of the Law of the Case Doctrine

The doctrine of law of the case limits the relitigation of an issue once it has been decided. *Rezzonico v. H & R Block*, 182 F.3d 144, 148 (2d Cir. 1999). However, the doctrine also concerns the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. *Id*. Inquiries "regarding application of law of the case arise when a party directly attacks a decision by attempting to have it corrected, annulled, reversed, vacated or declared void by the court that made it." *Id*. "'As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case.'" *Id*. (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). "[T]he law of the case doctrine is discretionary, not mandatory." *Id*. at 149.

In the instant matter, the Court held that *U.S. Bulk Carriers, Inc. v. Arguelles*[4] could not be read to bar completely enforcement of an arbitration clause in statutory wage suits brought by seamen. 400 U.S. 351 (1971); (March 26, 2010 Order at 10.) The Court further held that, notwithstanding the uncertainty of how the voluntary arbitrators or the arbitrators from the National Labor Relations Commission ("NLRC") "will construe the relevant jurisdictional

---

[4] The *Arguelles* Court essentially held that the section of the Labor Management Relations Act providing a federal remedy to enforce the grievance and arbitration provisions of collective bargaining agreements in an industry affecting commerce does not abrogate a statutory remedy of a seaman to sue for wages in federal court, but merely provides an optional remedy. *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351 (1971).

5

provisions of Filipino law and agreements in issue, the proper course here is to compel arbitration." (March 26, 2010 Order at 16.); *see PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 407 (2003)).

However, Defendants' reliance on the law of the case doctrine is somewhat misapplied in the instant matter.  While the law of the case doctrine permits the Court to extend its ruling compelling the initial eight Filipino plaintiffs to arbitrate to the recently located fifty-eight seamen, it does not extend the ruling to include employment periods for which no contracts containing arbitration agreements have been produced.  Indeed, the Court's deference to the NLRC in deciding the relevant Filipino plaintiffs' statutory wage claims during the course of contractually enforced arbitration is not to be construed as the sanctioning of Philippines-based arbitration for all Filipino seafarers for all employment periods.  As the Court noted above and in its March 26, 2010 Order, only those Filipino plaintiffs for whom contracts incorporating Standard Terms and Conditions setting forth arbitration provisions have been produced are compelled to arbitrate their claims in the Philippines and only for the employment periods specified therein.

## CONCLUSION

For the reasons stated above, the initial eight Filipino plaintiffs as well as the newly discovered fifty-eight seamen for whom contracts containing express arbitration agreements have been produced are compelled to arbitration and only for the employment periods for which the respective contracts were executed.

SO ORDERED.

Dated: Brooklyn, New York
August 30, 2016

/s/
DORA L. IRIZARRY
Chief Judge