UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
SYLVESTER DZIENNIK, MIECZYSLAW
KIERSZTYN, FERDYNAND KOBIEROWSKI,
individually and on behalf of all persons
similarly situated,

       Plaintiffs,    **MEMORANDUM & ORDER**
              05-CV-4659 (DLI)(JO)

   -against-

SEALIFT, INC., FORTUNE MARITIME,
INC., SAGAMORE SHIPPING, INC.,
VICTORY MARITIME, INC.,

       Defendants.
-----------------------------------------------------------------x

MIECZYSLAW KIERSTIN,

       Plaintiff,

   -against-       06-CV-5305 (DLI)(JO)

M/V ADVANTAGE,

       Defendant.
-----------------------------------------------------------------x

JOSEF FELSKOWSKI,

       Plaintiff,

   -against-       04-CV-1244 (DLI)(JO)

SEALIFT, INC., SAGAMORE SHIPPING, INC.,

       Defendants.
-----------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

  Plaintiffs Sylvester Dziennik, Mieczyslaw Kiersztyn, and Ferdynand Kobierowski, individually and on behalf of all persons similarly situated (collectively, "Class Plaintiffs"), bring

this class action against defendants Sealift, Inc. ("Sealift"), Fortune Maritime Inc. ("Fortune"), Sagamore Shipping, Inc. ("Sagamore"), and Victory Maritime, Inc. ("Victory") (collectively, "Defendants") alleging violations of federal maritime law, specifically, sections 10313 and 11107 of the Seamen's Wage Act, codified at 46 U.S.C. § 10301, *et seq*.

Class Plaintiffs worked as seaman aboard U.S. flag vessels under the control of one or more of the Defendants. The class is composed of 209 seafaring employees, 113 of whom are Polish citizens and 96 of whom are Filipino citizens, employed on these vessels during various periods since January 1, 1999. Class Plaintiffs seek recovery of unpaid wages, overtime wages, and statutory penalties from Defendants under employment contracts and federal maritime law.

Presently before the Court is Defendants' November 20, 2015 motion for partial summary judgment[1] on the meanings of the terms "engaged" and "engagement," as used in 46 U.S.C. § 11107, which states that,

> An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was *engaged* or the amount agreed to be given the seaman at the time of *engagement*, whichever is higher.

*Id.* (emphasis added).

On March 26, 2010, the Court adopted a report and recommendation from the Honorable Marilyn D. Go, United States Magistrate Judge, *See Dziennik v. Sealift, Inc.*, 2009 WL 6302821 (E.D.N.Y. Mar. 16, 2009), *report and recommendation adopted as modified by* 2010 WL 1191993

---

[1] On August 4, 2016, Defendants indicated to the Court that clarification of the Court's March 26, 2010 order regarding arbitration could result in resolution of the case. *See* Defs.' Ltr., Dkt. Entry No. 235. Accordingly, the Court terminated Defendants' motion for partial summary judgment without prejudice to renew. *See* Minute Entry dated Aug. 30, 2016. On August 30, 2016, the Court issued an order clarifying its March 26, 2010 order. *See Dziennik v. Sealift, Inc.*, 2016 WL 4544024 (E.D.N.Y. Aug. 30, 2016). On March 8, 2017, the parties indicated that settlement efforts following the clarification were unsuccessful, and the Court automatically reinstated Defendants' motion for partial summary judgment regarding the meanings of "engage" and "engagement." *See* Minute Entry dated Mar. 10, 2017.

(E.D.N.Y. Mar. 26, 2010), holding that Defendants engaged Plaintiffs contrary to the law of the United States by failing to comply with the requirements of 46 U.S.C. §§ 10302, 8103(b), 8710, and that 46 U.S.C. § 11107 provides the remedy for Plaintiffs' claims in the form of "a statutory default to prevailing market wage[s]" in the case of an invalid contract. *See Dziennik*, 2009 WL 6302821, at *9-11.

The parties do not dispute that the Class Plaintiffs were hired and signed employment contracts at two foreign ports: Gdynia, Poland, and Manila, Republic of the Philippines. *See* Defs.' Mot. for Partial Sum. J. ("Defs.' Mem."), Dkt. Entry No. 232-2, at 1; Pls.' Opp'n to Defs.' Mot. for Partial Sum. J. ("Pls.' Opp'n"), Dkt. Entry No. 233, at 2. The parties disagree, however, on whether the signing of employment contracts constitutes an "engagement" and whether the Class Plaintiffs were "engage[d]" at the time and place of hire, as those terms are used in 46 U.S.C. § 11107. Defendants contend that the terms should be given their plain and ordinary meaning, which is "to hire" or "to employ," *See* Defs.' Mot. at 6-9, and Plaintiffs argue that such an interpretation creates an absurd result, and that the place of embarkation, not the port of hire, is where a seaman is engaged, *See* Pls.' Opp'n at 2.

For the reasons set forth below, the Court finds that "engage" and "engagement" have their plain and ordinary meaning and the Class Plaintiffs were engaged at their port of hire.

## DISCUSSION

### I.   Summary of the Parties' Arguments

This Memorandum & Order assumes familiarity with the underlying facts and issues of this more than decade old complex class action.[2] Defendants contend that the statutory language

---

[2] For a detailed description of the class action, see *Dziennik v. Sealift*, 2007 WL 1580080 (E.D.N.Y. May 29, 2007), granting class certification.

3

of 46 U.S.C. § 11107 is unambiguous, reference to the statute's legislative history is unnecessary, and the terms at issue must be accorded their plain meaning.  Defs.' Mem. at 6-10.  Defendants further argue that, should the Court review the legislative history, it, too, suggests that the terms should be given their plain meaning, and that it is the law of the case that the Class Plaintiffs were "engaged" prior to joining Defendants' vessels.  *Id.* at 10-12.

In opposition to Defendants' motion, Class Plaintiffs argue that seamen are engaged at the port of embarkation, not the port of hire, and that the legislative history of 46 U.S.C. § 11107 and the Class Plaintiffs' employment contracts both support this contention.  Pls.' Opp'n at 2-12.  Class Plaintiffs argue that there is no law of the case that demands Defendants' interpretation, and that construing the port of hire and the port of engagement as one and the same creates inconsistencies in the statute.  *Id.* at 12-19.  Finally, Class Plaintiffs urge the Court to adopt their interpretation of the terms so the result will not be contrary to U.S. law, promote unfair competition, or contribute to the decline of the U.S. merchant marine.  *Id.* at 20-22.

## II.   Statutory Interpretation

As with all questions of statutory interpretation, the Court begins with the plain language of the statute.  "'[A] fundamental cannon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'"  *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  "[W]hen the statutory language is plain, [the court] must enforce it according to its terms."  *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Dodd v. United States*, 545 U.S. 353, 359 (2005)) (additional citations omitted).  Courts have long presumed "that [the] legislature says . . . what it means and means . . . what it says.  *Dodd*, 545 U.S. at 357 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).  Therefore, "'reliance on legislative history is

4

unnecessary . . . [with] unambiguous language.'" *See Mohamad v. Palestinian Auth.*, 132 S.Ct. 1702, 1709 (2012) (quoting *Milavetz, Gallop & Milavetz, P.A. v. United States*, 130 S.Ct. 1324, 1332 n.3 (2010)). "When a term goes undefined in a statute, [the court] give[s] the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997, 2002 (2012) (citing *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)). Courts often look to dictionaries to determine the ordinary meaning of a term. *See, e.g.*, *Id.* at 2002-05. However, "'[w]here the result of a literal interpretation of statutory language is absurd, or where the obvious purpose of the statute is thwarted by such slavish adherence to its terms, [courts] may look beyond the plain language.'" *Local Union 36, Int'l Bhd. of Elec. Workers, ALF-CIO v. Nat'l Labor Relations Bd.*, 631 F.3d 23, 27 (2d Cir. 2010) (quoting *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985)).

### a. The Plain Meaning of the Statute

Section 11107 states:

> An engagement of a seaman contrary to a law of the United States is void. A seaman so engaged may leave the service of the vessel at any time and is entitled to recover the highest rate of wages at the port from which the seaman was engaged or the amount agreed to be given the seaman at the time of engagement, whichever is higher.

46 U.S.C. § 11107.

As an initial matter, the Court notes that Class Plaintiffs have only identified one case purporting to interpret when and where an engagement occurs. *See* Pls.' Opp'n at 9 (citing *United States v. The Thomas W. Haven*, 3 F. 347 (C.C.D. Mass 1880)). *The Thomas W. Haven* involved an intercoastal voyage where the master of the vessel failed "to make a contract in writing" with five men on board in violation of title 53 U.S.C., sections 4520 and 4521, entitling the men to "the highest rate of wages and certain other rights," and making the master liable for a civil penalty of $20 per man. *Id.* at 348. Though the court found the violation at issue to be under sections 4520

5

and 4521, in dicta, the court also discussed section 4515. *Id.* at 348 ("The asserted illegality . . . consists [of] a breach of the Revised Statutes, Secs. 4520 and 4521 . . . ."); *Id.* at 350 ("Section 4515 does not define the illegality . . . ."). As in effect at that time, section 4515 penalized a master or other officer who "knowingly receive[d] or accept[ed], to be entered on board of any merchant vessel, any seaman who has been engaged or supplied contrary to the provisions of that title . . . ." *Id.* at 348. In reaching its decision under sections 4520 and 4521, the court noted that, in instances where oral agreements were made and the seaman did not sign a written agreement upon boarding, "no oral engagement can be illegal until the last moment has elapsed in which a written engagement must be made, which is the moment before the anchor is weighed." *Id.* at 349-50.

Plaintiffs urge that *The Thomas W. Haven* demonstrates that an engagement cannot occur until a seaman joins the vessel, and, therefore, engagements occur at the port of embarkation. Pls.' Opp'n at 10 ("[A]n 'engagement' under U.S. law cannot be physically separated from the vessel.").³ But as Defendants point out, the court in *The Thomas W. Haven* was not applying the statutory section that includes the term "engagement," and, even if it were, the court merely concluded that an engagement only becomes illegal when the ship sets sail. *See The Thomas W. Haven*, 3 F. at 349-50 ("[N]o oral engagement can be illegal *until* the last moment has elapsed . . . .") (emphasis added). The court did not address where seamen are engaged. Therefore, *The Thomas W. Haven* provides little guidance in resolving the present issue.

Defendants cite four cases that they maintain support affording the terms "engage" and "engagement" their ordinary meaning. *See* Defs.' Mem. at 9. However, as with Class Plaintiffs'

---

³ Class Plaintiffs also cite *Kossick v. United Fruit Company*, 365 U.S. 731, 735 n.4 (1961) in support of their argument that seamen are engaged at the port of embarkation. *See* Pls.' Opp'n at 2-3. While this case previously has been cited by this Court, the Court did so in determining whether recoveries under § 11107 were considered wages. *See Dziennik*, 2010 WL 1191993, at *10. *Kossick*, which determined the validity of an oral agreement between a master and a crewman to pay for medical treatment, is silent as to *where* seamen are engaged, which is the issue here. *Kossick*, 365 U.S. at 731-35. Accordingly, the *Kossick* court's reference to the highest rate of wages at the port of embarkation is dicta.

6

analysis, none of Defendants' cases addressed the issue of where a seaman is engaged. *See TCW Special Credits v. Chloe Z Fishing Co.*, 129 F.3d 1330, 1333 (9th Cir. 1997) (defining "highest rate of wages"), *after remand*, *aff'd in part*, *rev'd in part*, *TCW Special Credits v. Barandiaran*, 2000 U.S. App. LEXIS 23239, at *5 (9th Cir. Sept. 8, 2009) (noting that *Chloe I* defined "highest rate of wages"); *Alkhulaqi v. Ocean Ships, Inc.*, 1996 WL 403057, at *2-3 (S.D.N.Y. July 18, 1996) (determining whether jurisdiction existed over defendant shipper); *Triton Container Int'l v. Compania Anonima Venezolana De Navegacion*, 1995 U.S. Dist. LEXIS 22175, at *17 (D. Guam Apr. 13, 1995) (affirming payment for transport from port of engagement).[4] Accordingly, the definition of the terms critical here appears to be an issue of first impression.

The ordinary meaning of "engage" and "engagement" is that these events occurred at the port of hire. First, the terms "engage" and "engagement," unlike other terms in the statute, are not defined, so the Court presumes that they are to be given their plain and ordinary meaning. *Taniguchi*, 132 S.Ct. at 2002. Second, dictionary definitions of the terms deal with "employment." Black's Law Dictionary defines "engage" as "[t]o employ or involve oneself; to take part in; to embark on." Black's Law Dictionary (10th ed. 2014). Defendants also point to Webster's New College Dictionary, which similarly defines "engage" as "[t]o obtain or contract for services of: TO EMPLOY." *See* Defs.' Mem. at 8 (emphasis original). Black's Law Dictionary defines "engagement" as "[a] contract or agreement involving mutual promises." Black's Law Dictionary (10th ed. 2014). As noted above, the parties do not dispute that the Class Plaintiffs were hired, contracted, and employed in Poland and the Philippines. Therefore, under the plain meaning of

---

[4] *Alkhulaqi* and *Triton* do seem to suggest, however, that the port of hire is the port of engagement. *See Alkhulaqi*, 1996 WL 403057, at *6-7 (discussing the "port of engagement" as being "the port in the United States from which the crew member was dispatched[] to the ship upon which a seaman is to be employed"); *Triton*, 1995 U.S. Dist. LEXIS 22175, at *17 (discussing payment of expenses incurred from bringing the seamen "from their port of engagement" to the ship).

7

the statute, the Class Plaintiffs were engaged, and the port of engagement is, in Poland and the Philippines.

The Court also notes that the shipping articles attached as Exhibit C to the Dodson declaration provide support for interpreting the terms to mean that a seaman is engaged prior to joining the vessel. As Exhibit C demonstrates, the majority of mariners hired for the voyage from Houston, Texas, to Tanzania and back have a "date & place of engagement" other than Houston. *See* Martucci Exhibit # 1, Dkt. Entry No. 233-2, at 27-30. This undercuts Plaintiffs' argument that the place of engagement is not the port of hire.

### b. Legislative History

Class Plaintiffs contend that the Court should not "interpret statutes in [a] mechanical fashion," and must look to the legislative history of the statute. *See* Pls.' Opp'n at 3 (quoting *United States v. Nat'l Marine Engineers Beneficial Ass'n*, 294 F.3d 385, 391 (2d Cir. 1961)). Though the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous," *See BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004) (citations omitted), authoritative legislative history serves an important purpose in "assist[ing] in discerning what Congress actually meant." *See United States v. Gayle*, 342 F.3d 89, 94 (2d Cir. 2003) (citing *Oklahoma v. New Mexico*, 501 U.S. 221, 235 n.5 (1991); *Cheung v. United States*, 213 F. 3d 82, 92 (2d Cir. 2000)); *See also Id.* (quoting *Disabled in Action of Metro. N.Y. v. Hammons*, 202 F.3d 110, 124 (2d Cir. 2000)) ("The most enlightening source of legislative history is generally a committee report, particularly a conference committee report, which we have identified as among 'the most authoritative and reliable materials of legislative history.'"). Here, the legislative history provides further support for interpreting the terms at issue as having their ordinary meaning.

8

Class Plaintiffs do not argue that the legislative history suggests that "engage" and "engagement" should not be given their ordinary meaning. Instead, Class Plaintiffs argue that, during recodification, "engage" and "engagement" replaced the terms "shipments" and "shipped," and the legislative history suggests that "shipments" and "shipped" refer to the port of embarkation, not the port of hire. *See* Pls.' Opp'n at 4-6. Notably, Class Plaintiffs discuss at great length the historical changes to 46 U.S.C. § 11107 and the meaning of "shipments" and "shipped," without mentioning the legislative history that accompanied the most recent codification of the statute.

The legislature has recodified § 11107 several times, most recently in 1983. *See* Pls.' Opp'n at 3-4. Plaintiffs contend that "codifications do not normally result in substantive changes," and "[t]here is no reason to assume that the change [from "shipments" and "shipped" to "engage" and "engagement"] was made for any substantive reason[s]." *Id.* at 4, 7 (quoting *Doyle v. Huntress Inc.*, 419 F.3d 3 (1st Cir. 2005) ("[I]t will not be inferred that Congress, in revising and consolidating laws, intended to change their effect, unless such intention is clearly expressed.")). Notably, Plaintiffs seemingly ask the Court to ignore the clear statements by the legislature that accompanied the most recent recodification of § 11107.

The legislative history accompanying the most recent recodification suggests both that: (1) any substantive changes were intentional, and (2) the statute should be interpreted consistent with its plain meaning, with little or no need to review or reference the legislative history. Under a section titled "substantive changes," the report from the committee on merchant marine and fisheries states that:

> The committee wants to make it clear, however, that **the bill as reported does in fact make a great many substantive changes to the present law**. Those changes are all either minor changes, adjustments, or modifications, or they are more significant changes to which the committee received no objection and which the

9

committee believed would enhance the clarity and effectiveness of the law and the [*sic*] generally accepted by the industry.  **Thus, if a comparison of the language of this bill with the existing law shows that a substantive change has resulted, it should be understood that that change was intended by the committee.**  The committee intends and hopes that the interpretation of the maritime safety laws as codified and enacted by this bill will be based on the language of the bill itself.  The bill, as reported, is based on that premise.  **There should, therefore, be little or no occasion to refer to the statutes being repealed in order to interpret the provisions of this bill.**

The committee also feels, as the courts have held, that **the literal language of the statute should control the disposition of the cases.**  There is no mandate in logic or in case law for reliance on legislative history to reach a result contrary to the plain meaning of the statute, particularly where that plain meaning is in no way unreasonable.

H.R. Rep. No. 98-338, at 932 (1983), *reprinted in* 1983 U.S.C.C.A.N. 924, 932 (emphasis added). Completely contrary to Class Plaintiffs' contention that there is "no reason" to assume that changes to the law were made for "any substantive reason[s]," Pls.' Opp'n at 4, the committee report clearly states that any substantive "change was intended," H.R. Rep. No. 98-338, at 932.  Given that the presumption against substantive changes in codification applies only "unless such intention [of substantive change] is clearly expressed," *Doyle*, 419 F.3d at 8 (citations and internal quotation marks omitted), the Court sees no reason to disregard such a clear pronouncement from the legislature that "substantive change . . . was intended by the committee."  *See* H.R. Rep. No. 98-338, at 932.

Importantly, *Doyle* examined the very same committee report language discussed above. *See Doyle*, 419 F.3d at 10-12.  While the First Circuit found that the legislative history provided mixed signals as to its intent to make substantive changes to the recodified laws, the First Circuit rejected the argument that Class Plaintiffs make here.  *Id.* at 12 ("[W]e do not apply the presumption of recodification that Congress did not intend substantive changes.").  This Court sees no reason to reach a contrary result.  The Court finds that, based on the clear legislative history, to

10

the extent revisions to 46 U.S.C. § 11107 created substantive changes, those changes were intended.

### c. Application of the Statute's Plain Meaning Does Not Create an Absurd Result

Class Plaintiffs next argue that the Court cannot interpret "engage" and "engagement" as having their ordinary meaning because to do so would create "internal conflicts and inconsistencies" in the statute and "eviscerate[] the protections afforded to seafarers." Pls.' Opp'n at 18-19. Defendants disagree, contending that applying the plain meaning to these terms is the only way that the remainder of the statutory scheme makes sense. Defs.' Mem. at 8-9.

Class Plaintiffs first claim that, if a seaman is engaged prior to joining the vessel, § 11107's provision granting the seaman the right to "leave the service of the vessel at any time" is rendered meaningless. Pls.' Opp'n at 18. However, the right to leave the vessel does not arise until the seaman is engaged "contrary to a law of the United States." 46 U.S.C. § 11107. This Court has already found that the Class Plaintiffs were engaged "contrary to a law of the United States," specifically, contrary to: (1) 46 U.S.C. § 10302,[5] which states that "the owner, charterer, managing operator, master, or individual in charge shall make a shipping agreement in writing with each seaman before the seaman commences employment"; (2) 46 U.S.C. § 8103(b), which requires that "on a documented vessel each unlicensed seaman must be a citizen of the United States"; and (3) 46 U.S.C. § 8701, which states that "an individual may not serve, on board a vessel . . . if the individual does not have a merchant mariner's document." *See Dziennik*, 2009 WL 6302821, at \*3-9. Since § 10302 permits the master of the ship to sign shipping articles with the seaman, that provision could not be breached, and thus the seaman not engaged under § 11107 "contrary to the

---

[5] The parties disagree as to whether shipping articles were required for some or all of the voyages at issue. The Court declines to address this issue at this time since it is an issue for trial. *See* Pls.' Opp'n at 14 n.5.

law," at the latest, until the seaman joins the vessel. *See* 46 U.S.C. § 10302; *Dziennik*, 2009 WL 6302821, at *3 ("Section 10302 requires that *before a voyage* . . . .") (emphasis added). Similarly, section 8103(b) and 8701 specifically contemplate the violation occurring when the seaman is aboard the vessel. *See* 46 U.S.C. § 8103(b) ("*[O]n a documented vessel* each unlicensed seaman must be a citizen of the United States.") (emphasis added); 46 U.S.C. § 8701 ("[A]n individual may not serve, *on board a vessel* . . . .") (emphasis added). Therefore, holding that a seaman can be engaged before he joins the vessel does not create inconsistencies in the statute, since a seaman may be engaged prior to joining the vessel, but such an engagement does not become *contrary to law* until the seaman joins the vessel.

The arguments for inconsistencies within § 11501 and § 10103 are equally unpersuasive, and the language of § 11501 actually undercuts Class Plaintiffs' argument. *See* Pls.' Opp'n at 18. Section 11501(2), for example, punishes "seaman lawfully engaged" who "refus[e] without reasonable cause to join the seaman's vessel or to proceed to sea in the vessel." 46 U.S.C. § 11501(2); *e.g.*, *Offer v. Basic Towing, Inc.*, 1998 WL 30127, at *1 (5th Cir. Jan. 16, 1998) (penalizing defendants for "breaching their employment contracts by refusing to sail"). Class Plaintiffs contend that a seaman cannot be engaged until he joins the vessel, but such an interpretation means that § 11501(2) could never apply. Under Class Plaintiffs' interpretation, seaman who have not joined the vessel are not "engaged," so they could never be punished for failing to join the vessel or proceeding to sea, which is exactly what § 11501(2) contemplates. The Court declines to adopt an interpretation that renders a section of the statute meaningless. *See Harrison Conference Servs., Inc. v. Dolce Conference Servs., Inc.*, 768 F. Supp. 405, 408 (E.D.N.Y. 1991) (citing *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973)) (additional citation omitted) ("The court should strive to give effect to all provisions of a

statute."). And while § 10103 requires that "[a] master of a vessel . . . who engages or discharges a seaman, shall submit reports to the vessel owner," nothing in this section requires that an engagement occur at the port of embarkation, or precludes an engagement from occurring earlier than when the seaman joins the vessel.[6]

Additional sections would be rendered meaningless if the Court adopts Class Plaintiffs' interpretation. For example, were the Court to hold that seamen are not engaged until they join the vessel, § 10302(b)(3), which requires that the shipping articles list the "time at which each seaman is to be on board to begin work," would be meaningless. *See* 46 U.S.C. § 10302(b)(3). There would be no purpose in listing the time at which a seaman is "to be on board" if the seaman was always on board the vessel when he was engaged. Similarly, § 10313 entitles a seaman "to wages and provisions . . . when the seaman begins work or when specified in the agreement . . . for the seaman to begin work or be present on board, whichever is earlier." *See* 46 U.S.C. § 10302. This section specifically contemplates a seaman being engaged and working prior to joining the vessel. Accordingly, the Court finds that interpreting the terms "engage" and "engagement" to refer to the port of hire does not create an absurd result that necessitates abandoning the plain meaning of the terms.

Finally, Class Plaintiffs argue that holding that seamen can be engaged somewhere other than the port of embarkation "eviscerates the protections afforded to seafarers." Pls.' Opp'n at 19. Class Plaintiffs offer little support for this argument, other than simply stating the truisms that the laws at issue were adopted to protect seafarers, and Defendants unlawfully engaged the Class Plaintiffs. *Id.* These conclusory statements do not convince the Court that it should ignore the

---

[6] The Court notes that the language of 46 U.S.C. § 10103 also has not been interpreted by the courts.

plain language of the statute, which the legislative history clearly suggests controls, and which does not create an absurd result.

**III.  Additional Arguments for the Port of Embarkation as the Place of Engagement**

   **a. Class Plaintiffs' Employment Contracts**

Class Plaintiffs also point to their employment contracts in support of their argument that the Defendants engaged the seaman at the port of embarkation.  *See* Pls.' Opp'n at 7.  Paragraph X of the Polish employment contracts covers "costs connected with transportation from the place of seaman's domicile to the port of employment."  *See* Exhibit C to Decl. of Gregory O'Neill, Dkt. Entry No. 232-6, at ¶ X; Pls.' Opp'n at 7.  Section 3 of the Philippines employment contract provides for "free passage from the point of hire to the port of embarkation."  *See* Exhibit D to Decl. of Gregory O'Neill, Dkt. Entry No. 232-7, at Sec. 3; Pls.' Opp'n at 7.  Class Plaintiffs contend that the language of these employment contracts demonstrates that port of hire and port of embarkation are separate and distinct.  *See* Pls.' Opp'n at 7.

While Class Plaintiffs may be correct that in some instances the port of hire and port of embarkation are distinct and separate places, that fact does not demand the result they urge.  As discussed above, *supra* Section II.a, the Court has rejected Class Plaintiffs' argument that "engage" and "engagement" refer to the port of embarkation, as the language of the statute suggests that seamen are "engaged" and the place of "engagement" is the port of hire.

   **b. Policy Considerations**

Class Plaintiffs posit policy concerns for the Court's consideration in determining the definition of the terms "engage" and "engagement."  *See* Pls.' Opp'n at 19-24.  They allege that adopting Defendants' definition would:  (1) create a windfall for Defendants; (2) be contrary to United States law; (3) contribute to unfair competition and the decline of the United States

14

merchant marine; and (4) contribute to the loss of American jobs. *Id.* Even accepting all of Plaintiffs' arguments as true, "it is of course [the Court's] job to apply faithfully the law Congress has written, [and] it is never [the Court's] job to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have done had it faced a question that, on everyone's account, it never faced." *See Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1725 (2017) (citing *Magwood v. Patterson*, 561 U.S. 320, 334 (2010) ("We cannot replace the actual text with speculation as to Congress' intent.")); *Id.* (quoting *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam) ("Indeed, it is quite mistaken to assume . . . that 'whatever' might appear to 'further[] the statute's primary objective must be the law.'")).[7] The Court is bound to construe the statute according to its plain meaning.

## IV.     Law of the Case

Defendants contend that it is law of the case that Class Plaintiffs were engaged prior to signing shipping articles, since the magistrate judge held that § 11107 provides a remedy for any engagement contrary to law, including sections 10302, 8701, and 8103(b), which are at issue here. *See* Defs.' Mem. at 10-12.  In opposition, Class Plaintiffs argue that there is no law of the case on this issue, and that the Court has not decided the issue of "when and where [the] 46 U.S.C. § 8103(b) and 46 U.S.C. § 8701 violations occurred." *See* Pls.' Opp'n at 13.  Both parties are correct.

---

[7]     The parties both point out the unlikelihood of the underlying events of this action occurring again. *See* Defs.' Reply Mem. of Law ("Defs.' Reply"), Dkt. Entry No. 234 at 1-2 ("This case is anomalous in another way; it likely will not occur again.  The widespread practice of employing 'riding gang' members in reliance on the Coast Guard's mixed signals as to the legality of that practice came to an end in 2006 when comprehensive legislation was passed defining 'riding gang' members, limiting the types of jobs and number of days per vessel on which they could be employed, and exempting them from the articles, citizenship and merchant mariners' requirements of the U.S. Code. *See* 46 U.S.C. §§ 2101(26a), 8103(j), 8106, 10301(6)."); Pls.' Opp'n at 21-22 & n.11 ("Today, as the court is well aware, seamen seeking employment on a Sealift vessel flying the US flag must possess US citizenship, Coast Guard issued credentials and membership in a US maritime Union under contract with Sealift.").  Accordingly, many of Class Plaintiffs' concerns may have been dealt with through other statutory changes effected during the pendency of this litigation.

The issue before the Court is not what remedy is available to Class Plaintiffs or where the violations occurred, but rather where Defendants engaged the Class Plaintiffs. Defendants are correct that the Court previously has held that § 11107 provides the remedy for any engagement contrary to the laws of the United States. *See Dziennik*, 2009 WL 6302821, at *9 (quoting *Doyle*, 419 F.3d at 9, 13) ("Section 11107 'entitle[s] all seaman engaged contrary to the provisions of *any act of Congress* . . . .") (emphasis original). However, as Class Plaintiffs point out, in that opinion, the Court did not address when and where seamen are engaged (thus the necessity of the instant opinion). To the extent Defendants argue that construing the statutory text according to its "plain meaning" is the law of the case, the Court's previous interpretations of other portions of the relevant statutory sections does not bind its interpretation here. Moreover, as discussed above, *supra* Section II.c, the fact that sections 10302, 8701, and 8103(b) contemplate violations occurring aboard a vessel is not inconsistent with holding that seamen can be "engaged" prior to the violations occurring, at the port of hire.

**V.     The Appropriate Wage Rates**

Finally, Class Plaintiffs ask that the Court determine the applicable wage rates. Pls.' Opp'n at 24-25. The instant motion is for a determination as to the meaning of the terms "engage" and "engagement" as used in 46 U.S.C. § 11107, and as such, the issue of the appropriate wage rates is beyond the motion's scope. Accordingly, the Court declines to address the issue.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion for partial summary judgment is granted. Accordingly, the Court finds that the terms "engage" and "engagement" have their ordinary meaning, and the "port of engagement" refers to the port of hire. Defendants engaged Class Plaintiffs in Manila, Republic of the Philippines, and Gdynia, Poland.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2018

                                                          /s/
                                                  DORA L. IRIZARRY
                                                     Chief Judge