```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SYLVESTER DZIENNIK, MIECZYSLAW           :
KIERSZTYN, FERDYNAND KOBIEROSKI,         :
individually and on behalf of all persons :
similarly situated,                      :
                                         :
                      Plaintiffs,        :    MEMORANDUM & ORDER
                                         :    05-cv-4659(DLI)(JRC)
        - against -                      :
                                         :
SEALIFT, INC., SEALIFT HOLDINGS, INC.,   :
FORTUNE MARITIME INC., SAGAMORE          :
SHIPPING INC., VICTORY MARITIME, INC.,   :
                                         :
                      Defendants.        :
-----------------------------------------------------------------x
JOSEF FELSKOWSKI,                        :
                                         :
                      Plaintiff,         :    MEMORANDUM & ORDER
                                         :    04-cv-1244(DLI)(JRC)
        - against -                      :
                                         :
SEALIFT, INC., SAGAMORE SHIPPING INC.,   :
                                         :
                      Defendants.        :
-----------------------------------------------------------------x
MIECZYSLAW KIERSTIN,                     :
                                         :
                      Plaintiff,         :    MEMORANDUM & ORDER
                                         :    06-cv-5305(DLI)(JRC)
        - against -                      :
                                         :
M/V ADVANTAGE, ET. AL.,                  :
                                         :
                      Defendants.        :
-----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Plaintiffs Sylvester Dziennik ("Dziennik"), Mieczyslaw Kiersztyn ("Kiersztyn"), and Ferdynand Kobierowski ("Kobierowski"), individually and on behalf of all persons similarly situated (collectively, "Class Plaintiffs"), bring this class action against defendants Sealift, Inc.

("Sealift"), Fortune Maritime Inc. ("Fortune"), Sagamore Shipping, Inc. ("Sagamore"), and Victory Maritime, Inc. ("Victory") (collectively, "Defendants") alleging violations of federal maritime law, specifically under Sections 10313 and 11107 of the Seamen's Wage Act, codified at 46 U.S.C. § 10301, *et seq*.

Class Plaintiffs worked as seafarers aboard U.S. flagged vessels under the control of one or more Defendants. The class is composed of Polish citizens and Filipino citizens employed on these vessels during various periods since January 1, 1999. Class Plaintiffs seek recovery of unpaid wages, overtime wages, and statutory penalties from Defendants under employment contracts and federal maritime law.

On March 26, 2010, the Court adopted in part and modified in part the report and recommendation issued by the Honorable Marilyn D. Go, United States Magistrate Judge of this Court (Ret.), thereby granting Defendants' motion to compel arbitration as to the eight Filipino seafarers for whom Defendants produced executed copies of Philippines Overseas Employment Administration ("POEA") contracts accompanied by standard terms and conditions containing arbitration clauses while denying compelled arbitration as to the remaining Filipino plaintiffs. *See*, Memorandum & Order dated March 26, 2010 ("2010 M&O"), Dkt. Entry No. 119.

On October 15, 2013, Defendants filed a motion to compel arbitration for an additional fifty-five Filipino class members who had signed POEA contracts accompanied by signed standard terms and conditions containing arbitration clauses. *See*, Defendants' Second Mot. to Compel Arbitration ("Defs.' Second Mot."), Dkt. Entry No. 205. On August 30, 2016, the Court issued a Memorandum and Order ("2016 M&O") compelling arbitration for the fifty-eight[1] additional Filipino seafarers for whom Defendants produced signed and executed copies of the POEA

---

[1] Defendants located three additional Filipino seafarers who qualified for class representation and added them to the Filipino class of plaintiffs.

2

contracts and standard terms and conditions containing arbitration clauses. *See*, 2016 M&O, Dkt. Entry No. 237.

Presently before the Court is Defendants' renewed motion to compel arbitration for all remaining Filipino class members. *See*, Defs.' Mem. of Law in Support of the Renewed Mot. to Compel Arbitration ("Defs.' Mem."), Dkt. Entry No. 281. On April 13, 2023, Class Plaintiffs opposed the motion. *See*, Class Pls.' Mem. of Law in Opp. to Defs.' Renewed Mot. to Compel Arbitration ("Pls.' Opp."), Dkt. Entry No. 284. On May 1, 2023, Defendants replied. *See*, Defs.' Reply, Dkt. Entry No. 287.

For the reasons set forth below, Defendants' motion is granted and all Filipino class members are required to arbitrate their claims.

## DISCUSSION

### I.   Legal Standard

As an initial mater, the parties dispute the scope of Defendants' motion as discussed at the January 10, 2023 status conference. *See*, Pls.' Opp. at 7, 14-15; *See also*, Defs.' Reply at 2, 5-6. While Defendants filed the instant motion as a renewed motion to compel arbitration, it is more accurately a motion for reconsideration because the Court is being asked to reconsider its 2010 and 2016 M&Os in light of the Second Circuit's subsequent decision in *Pagaduan v. Carnival Corp.*, 709 Fed. App'x 713 (2d Cir. 2017). The Court, in permitting the filing of the very belated motion for reconsideration, directed the parties to provide the relevant contracts, the allegedly incorporated materials, and any relevant deposition testimony to aid the Court in its analysis. *See*, January 10, 2023 Status Conf. Transcript, Dkt. Entry No. 286-1 at 8, 18-22, 26-27, 28-29.

It is well established in this Circuit that "[a] party may move for reconsideration and obtain relief *only when the party identifies an intervening change of controlling law*, the availability of

new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (brackets and citation omitted) (emphasis added). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). Accordingly, the Court analyzes the instant motion, which seeks to compel arbitration for the remaining Filipino class members, only within the purview of *Pagaduan.*

In *Pagaduan*, a seafarer had signed a single page employment contract that, on its face, did not contain an arbitration provision. *Pagaduan*, 709 F. App'x at 716. However, the contract referenced secondary documents governing seafaring employment contracts that called for arbitration of employment disputes. *Id*. The relevant portion of the single page contract stated, "herein terms and conditions in accordance with POEA Governing Board Resolution No. 09 and Memorandum Circular No. 10 ... shall be strictly and faithfully observed." *Id*. at 714. While the seafarer argued that he was unaware of the arbitration clause and disputed signing the terms and conditions contained within POEA Governing Board Resolution No. 09 and Memorandum Circular No. 10, the Second Circuit held that the referenced documents and arbitration clause were incorporated into the contract as a matter of law because the seafarer's "[c]ontract clearly and unambiguously described the documents whose terms would apply" to his employment. *Id*. at 716, 717. The Court further found that any lack of awareness on part of the plaintiff failed to "rebut[] the powerful presumption in favor of enforcing freely negotiated contracts, especially in the arbitration context[,]" and the employer was not required to prove that the seafarer signed *both* the employment contract and documents incorporated by reference. *Id*. (emphasis added).

4

Accordingly, the seafarer was required to arbitrate his claims.

## II. Filipino Class Members Who Signed the 2000 Series Contract

Prior to the Second Circuit's decision in *Pagaduan*, this Court held that Filipino class members who had signed the 2000 Series Contract were not required to arbitrate their claims if they had not signed the terms and conditions in the documents referenced in the 2000 Series Contract. *See*, 2010 M&O at 7. In light of *Pagaduan*, Defendants now contend that Filipino class members who signed the 2000 Series Contract but not the referenced documents are required to arbitrate in the Philippines. The Court agrees.

Similar to the contract at issue in *Pagaduan*, the 2000 Series Contract here provides that "the herein after terms and conditions in accordance with Department Order No. 4 and Memorandum Circular No. 09, both Series of 2000, shall be strictly and faithfully observed." *See*, 2000 Series Contract, Dkt. Entry No. 281-2. Thus, Department Order No. 4 and Memorandum Circular No. 09 are incorporated into the contract as a matter of law because the contract "clearly and unambiguously describes the documents whose terms would apply. *See, Pagaduan*, 709 F. App'x at 716. Notably, the language contained within Memorandum Circular No. 09, Section 29 mirrors that of Memorandum Circular No. 10 Section 29 in *Pagaduan*, mandating arbitration. *Compare,* Mem. Cir. No. 9 ("Mem. 9"), Dkt Entry No. 281-4 *with*, *Pagaduan*, 709 F. App'x at 715. Accordingly, all Filipino class members who signed the 2000 Series Contract without also having signed the standard terms and conditions are required to arbitrate their claims in the Philippines.

## III. Filipino Class Members Who Signed the 1996 Series POEA Contract

While the Second Circuit in *Pagaduan* did not evaluate the 1996 Series Contract, Defendants contend that Filipino class members who signed the 1996 Series Contract also are

5

required to arbitrate their claims in light of *Pagaduan*.  *See*, Defs.' Mem. at 9-13.  The Court agrees.

The contract before the Second Circuit in *Pagaduan*, the 2000 Series Contract, and the 1996 Series Contract utilize similar language with respect to terms and conditions contained in other specified documents that apply to the contract:

> ***Pagaduan* Contract**: herein terms and conditions in accordance with POEA Governing Board Resolution No. 09 and Memorandum Circular No. 10 ... shall be strictly and faithfully observed.
>
> **2000 Series Contract**: the herein after terms and conditions in accordance with Department Order No. 4 and Memorandum Circular No. 09, both Series of 2000, shall be strictly and faithfully observed.
>
> **1996 Series Contract**: the terms and conditions of the revised Employment Contract governing the employment of all seafarers approved per Department Order No. 33 and Memorandum Circular No. 55 both Series of 1996 shall be strictly and faithfully observed.

*See*, *Pagaduan*, 709 F. App'x at 714; *See also*, 2000 Series Contract; 1996 Series Contract, Dkt. Entry No. 281-1.  Class Plaintiffs contend that *Pagaduan* does not apply to the 1996 Series Contract because the Second Circuit did not evaluate that specific contract.  This argument is unavailing as it misconstrues the Second Circuit's holding that referenced documents are incorporated into a contract *as a matter of law* when the contract "clearly and unambiguously describes the documents for whose terms and conditions would apply."  *See, Pagaduan*, 709 F. App'x at 716 (emphasis added).

Here, Department Order No. 33 and Memorandum Circular No. 55 are clearly and unambiguously described in the 1996 Series Contract.  Significantly, the 1996 Series Contract, as does the 2000 Series Contract, explicitly states that the terms and conditions approved per Department Order No. 33 and Memorandum Circular No. 55 shall be strictly and faithfully

6

observed.[2] *See*, 1996 Series Contract.  Applying the same rationale utilized by the Second Circuit in *Pagaduan*, the standard terms and conditions contained within Memorandum Circular No. 55 ("Standard Terms") were incorporated by reference and are part of the contract as a matter of law. *See*, *Pagaduan*, 709 F. App'x at 715-17; *See also*, *Cho*, 991 F.3d at 170 (explaining that reconsideration will be granted if the moving party points to a controlling decision that "might reasonably be expected to alter the conclusion reached by the court.").

Notably, "Section 28. JURISDICTION" of the Standard Terms provides that:

> The Philippine Overseas Employment Administration (POEA) or the National Labor Relations Commission (NLRC) *shall have original and exclusive jurisdiction over any and all disputes or controversies arising out of or by virtue of this Contract*. Recognizing the peculiar nature of overseas shipboard employment, the employer and the seafarer agree that all claims arising from this contract shall be made within one (1) year from the date of the seafarer's return to the point of hire.

*See*, Mem. Cir. No. 55 at 14 (emphasis added).  While Section 28 does not mention the word "arbitrate," in light of *Pagaduan*, which brought the Second Circuit in line with every other court that previously had interpreted this clause, the Court concurs with Defendants that it requires resolution of any employment contract dispute in the Philippines before it is subject to the judicial process. *See e.g.*, *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220-21 (5th Cir. 1998) (relying on *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972) and *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) to find that Section 28 establishes a valid forum selection clause to hear the seafarers' claims under the contract); *Acosta v. Norwegian Cruise Line, Ltd.*, 303 F. Supp.2d 1327, 1330 (S.D.FL. 2003) (finding that Section 28 is an arbitration clause because it grants original and exclusive jurisdiction over any disputes arising from the contract to a body of labor arbiters); *Gavino v. Eurochem Italia*, 2001 WL 845456, at *2, FN. 5 (E.D. LA. July 24, 2001)

---

[2] Memorandum Circular No. 55 contains the standard terms and conditions. *See*, Mem. Cir. No. 55, Dkt. Entry No. 281-6 at 4-27.

(finding from a plain reading of Section 28 that it is a forum selection clause requiring dispute resolution in the Philippines prior to engaging judicial process.).

Class Plaintiffs' contention that the Court could have considered these cases in rendering its 2010 decision is misplaced. Consistent with the law in the Second Circuit as it existed at the time of the 2010 M&O, the Court determined that "arbitration cannot be compelled as to any plaintiffs for whom defendants [had] not produced executed Standard Terms because defendants [had] not established the existence of an agreement to arbitrate by a preponderance of the evidence." *See*, 2010 M&O at 7. Thus, at that time, the Court did not need to consider those cases, most of which were non-binding precedent from outside of this Circuit, and determine whether Section 28 required dispute resolution in the Philippines because the Filipino class members had not agreed to the terms and conditions contained within the Standard Terms. *Id*. However, in light of *Pagaduan*, the Court now finds the Filipino class members were not required to sign the standard terms and conditions, and the arbitration clause contained within Section 28 was incorporated into the signed 1996 Series Contract as a matter of law. *See*, *Pagaduan*, 709 F. App'x at 716, 717. Accordingly, a preponderance of the evidence demonstrates that the Filipino class members who signed 1996 Series Contract agreed to arbitrate their claims and are required to do so in the Philippines.

**IV.      Filipino Class Members Without Signed POEA Contracts**

Defendants also contend that the Court should compel arbitration for the Filipino seafarers for whom Defendants failed to produce a signed contract because Class Plaintiffs admitted in their Federal Rule of Civil Procedure 36 responses to Defendants' Request to Admit that all Filipino class members signed a POEA approved contract. *See*, Defs.' Mem. at 13-16. The Court agrees.

8

The Second Circuit instructs district courts to treat motions to compel arbitration as motions for summary judgment. *See, Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49 (2d Cir. 2022) (explaining that a court must "draw all *reasonable inferences* in favor of the non-moving party" and shall proceed to trial if there is a genuine dispute of material fact regarding "the making of the arbitration agreement.") (emphasis added). Additionally, it is well established in the Second Circuit that a party's answers to Federal Rule of Civil Procedure 36 interrogatories are admissible evidence for the purpose of summary judgment. *See, S.E.C. v. Dynasty Fund, Ltd.*, 121 F. App'x 410, 411 (2d Cir. 2005) (citing *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 651 (2d Cir. 1983)). "The very purpose of the [Rule 36] request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial." Fed. R. Civ. P. 36 Advisory Committee Note 1970.

First, Defendants' Request to Admit No. 4 asked Class Plaintiffs to admit that:

> Philippine law requires each Filipino seafarer who accepts employment by a foreign employer to sign a POEA-approved POEA Contract of employment and Standard Terms, which include an agreement to arbitrate all claims and disputes arising from his employment in Philippines arbitration.

*See*, Requests to Admit, Dkt. Entry No. 281-8 at 6. While Class Plaintiffs objected to this request as calling for a conclusion of law, they nonetheless responded that:

> To the extent Defendants' Request to Admit No. 4 *calls for the admission of a fact* or the application of law, *Plaintiffs understand that each Filipino seafarer was required to execute a one page POEA-approved Contract* and said one page Contract is the best evidence of the Terms and Conditions of the POEA.

*Id*. at 6-7 (emphasis added).

Next, Defendants' Request to Admit No. 6 asked Class Plaintiffs to admit that:

> No Filipino class member left the Philippines for employment on a Vessel listed in the Class Action Notice filed in this action on April 8, 2008 (hereinafter "Class Action Notice") between January 1, 1999 to October 3,

9

> 2005 without first signing a POEA Contract and Standard Terms including an agreement to arbitrate all claims and disputes arising from his employment in Philippines arbitration.

*Id*. In relevant part, Class Plaintiffs responded by stating:

> Denied. *It is believed that the Philippine class member plaintiffs signed a one-page POEA Contract* and a separate contract in which Defendants described the Plaintiffs as 'Sailing School Students.' It is believed only a limited number of the Philippine class members executed the 'Standard Terms' containing Section 29 which the Defendants contend contains an arbitration agreement.

*Id*. at 7 (emphasis added). A plain reading of Class Plaintiffs' response in the context of the requested admission is that Filipino class members did not sign both a one-page POEA Contract and the standards terms. Instead, all Filipino class members signed a one-page POEA Contract and a "Sailing School Student" contract while only a limited number of Filipino class members also signed the standard terms that included an arbitration agreement.[3]

Remarkably, despite using the words "understand" and "believe," Class Plaintiffs disingenuously contend that their responses are not admissions because they have no "definite knowledge" of the requested information. *See*, Pls.' Opp. at 16. Again, "[t]he very purpose of the request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial." Fed. R. Civ. P. 36 Advisory Committee Note 1970. The Court is unconvinced that Class Plaintiffs' use of the terms "understand" and "believe" is anything but an admission that they now attempt to disavow in light of *Pagaduan*. Consequently, this Court finds that Class Plaintiffs have admitted that every Filipino class member signed a one-page POEA approved contract during the class period.

---

[3] The Sailing School Student contracts are silent as to arbitration. *See*, Sailing School Contract, Dkt. Entry No. 284-12.

Notably, the parties do not dispute that the POEA contracts at issue are the single page 2000 Series and 1996 Series Contracts. *See*, Defs.' Mem. at 5-16; *See also*, Pls.' Opp. at 6-14. As discussed above, the 1996 and 2000 Series Contracts require arbitration in the Philippines pursuant to *Pagaduan*. Accordingly, as the remaining Filipino class members signed either the 1996 or 2000 Series Contract, they are required to arbitrate their claims in the Philippines pursuant to *Pagaduan*.

## V.   NLRC's *Llagas* Decision

Finally, Class Plaintiffs contend that the Court should not compel arbitration against any Filipino class member based upon the NLRC's December 29, 2021 decision in *Daniel Llagas v. Magsaysay Maritime Corporation, Sealift Holdings, Inc. and Marlon Rono*, NLRC Case No. 05-0192-21, where the NLRC arbitrator did not apply United States law in an action involving Sealift and a U.S. flagged ship. *See*, Pls.' Opp. at 24-30; *See also*, *Llagas* Decision, Dkt. Entry No. 284-8.

As an initial matter, Class Plaintiffs' counsel has been aware of the *Llagas* decision since December 2021 because Class Plaintiffs' counsel represented the plaintiff in that matter. Not only did Class Plaintiffs fail to bring this decision to the Court's attention then, but Class Plaintiffs now belatedly seek to bootstrap their own motion for reconsideration to Defendants' motion. In any event, Plaintiffs' reliance on *Llagas* is misplaced and unavailing.

In *Llagas*, the NRLC found that Filipino law governed the dispute between the Filipino seafarer and his employer and dismissed the claims. *See*, *Llagas* at 8-11. Thus, Class Plaintiffs contend that compelling arbitration for any Filipino class member will result in the prospective waiver and denial of the statutory rights applicable to them as seaman on Sealift's U.S. flagged

11

vessels which renders the arbitration clause null and void. *See*, Pls.' Opp. at 30. The Court disagrees.

Class Plaintiffs' prospective waiver argument, a defense applicable through the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, is inapplicable because it "applies to the recognition of arbitral awards, not to the enforceability of arbitration clauses." *Lucina v. Carnival PLC*, 2019 WL 1317471, at *7 (E.D.N.Y. Mar. 22, 2019) (finding such an argument is premature when seeking to compel arbitration since the court can "retain[] jurisdiction over the case and will have the opportunity at the award-enforcement stage to ensure that the legitimate interest in the enforcement of the ... laws will be addressed") (quoting in parenthetical, *Vimar Seguras v Reaseguros v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995)); *See also*, *Moskalenko v. Carnival PLC*, 2019 WL 1441127, at *9-10 (E.D.N.Y. Mar. 29, 2019) (same) (citing *Lindo v. NCL (Bahamas) Ltd.*, 652 F.3d 1257, 1280 (11th Cir. 2011).

Furthermore, the Court agrees with Defendants that, even if this argument is not premature, Class Plaintiffs failed to show that the choice-of-forum and choice-of-law provisions in this case "operate[] in tandem as a prospective waiver of a party's right to pursue statutory damages." *See*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, FN. 19 (1995). Choice-of-forum and choice-of-law provisions operate in tandem when "'the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair.'" *Lucina*, 2019 WL 1317471, at *7 (citing *Lindo*, 652 F.3d at 1283); *See also*, *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1017 (5th Cir. 2015); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998). While Class Plaintiffs contend that the NLRC's *Llagas* decision demonstrates this inadequacy, their contention is unavailing since the "*Llagas* [plaintiff] put forth no evidence to satisfy Arbiter Saliba that he was

12

entitled to damages under 46 U.S.C. §§ 8106, 8107, 10302, 10313, and 11107." *Llagas v. Sealift Holdings Inc.*, 2022 WL 16821811 at *8 (W.D. LA. Nov. 8, 2022) (finding that the plaintiff could not claim that the foreign tribunal provided no relief for his statutory claims when he received an unfavorable decision). Accordingly, the Court is unpersuaded by *Llagas* to diverge from the Second Circuit's decision in *Pagaduan* that compels arbitration under the circumstances here.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration of all remaining Filipino class members is granted. Accordingly, all remaining Filipino class members are required to arbitrate their claims in the Philippines.

SO ORDERED.

Dated: Brooklyn, New York
       June 1, 2023

                                                                               /s/
                                            DORA L. IRIZARRY
                                       United States District Judge